**In re LES HALLES DE PARIS J.V.**

No. 02–1539.

United States Court of Appeals, Federal Circuit.

July 11, 2003.

Myron Cohen, Cohen, Pontani, Lieberman & Pavane, of New York, NY, argued for appellant. With him on the brief were Lance J. Lieberman and Jeremy Kaufman.

Stephen Walsh, Associate Solicitor, of Arlington, VA, argued for the Director of the United States Patent and Trademark Office. With him on the brief were John M. Whealan, Solicitor, and Nancy C. Slutter, Associate Solicitor. Of counsel were Cynthia C. Lynch and William G. Jenks, Associate Solicitors.

Before NEWMAN, RADER, and DYK, Circuit Judges.

RADER, Circuit Judge.

Les Halles De Paris J.V. (Les Halles or applicant), appeals the Trademark Trial and Appeal Board's (Board) refusal to register its mark—LE MARAIS—for restaurant services. Citing section 2(e)(3) of the Lanham Act, 15 U.S.C. § 1052(e)(3) (2000), the Board concluded that the mark was primarily geographically deceptively misdescriptive. *See In re Les Halles de Paris J.V.*, 2002 WL 850842, 2002 TTAB LEXIS 263, at *12–14. Because the Board applied an outdated standard for section 2(e)(3), this court vacates and remands.

## I.

On July 14, 1999, Les Halles filed its application to register the service mark LE MARAIS in connection with "restaurant services" in International Class 42. The application documented use of the mark from as early as June 4, 1995, as the name for Les Halles' restaurant in New York that serves a French kosher cuisine. The United States Patent and Trademark Office (PTO) concluded that the mark is primarily geographically deceptively misdescriptive under section 2(e)(3) and refused to register it on the Principal Register. After rejecting Les Halles' request for reconsideration, the PTO made its refusal to register the mark final on September 12, 2000.

Les Halles appealed to the Board, which affirmed the PTO's refusal to register Les Halles' mark.* As evidence that the mark uses misdescriptive geographic terms, the Board referred to articles and travel brochures about the Jewish quarter or neighborhood in Paris known as Le Marais. This record evidence included various statements about Le Marais being a fashionable Jewish area in Paris with fine restaurants. For example, one article stated: "Over the years Le Marais has moved from obscurity into a gilded age of offbeat and fashionable galleries, restaurants, chic boutiques and unusual museums." Another article referenced Le Marais as "[t]he old Jewish Quarter . . . [which] blends chic apartment renovations with tiny cafes, fine new restaurants and ancient synagogues, all on narrow, sinuous streets."

Based on this record, the Board concluded: "[T]he primary significance of [Le Marais], at least to an appreciable segment of applicant's restaurant patrons, will be of the geographic location in Paris." In addition, the Board reasoned that because Les Halles' restaurants "are touted as being French kosher steakhouses . . . actual and potential customers of applicant's restaurants will believe that there is a connection between applicant's restaurants and the [Jewish Quarter] in Paris known as Le Marais." The Board emphasized that it was "not finding that the Examining Attorney has shown that Le Marais is noted for its restaurants or cuisines." Ultimately, however, the Board affirmed the PTO's refusal to register Les Halles' mark under section 2(e)(3) because it is primarily geographically deceptively misdescriptive.

Les Halles appealed to this court, arguing the evidence of record is insufficient to support a finding that the public would be misled to believe that the Le Marais restaurants in New York have a connection to the region in Paris. This court has juris-

---

* Les Halles also appealed the Patent and Trademark Office's (PTO's) refusal to register its mark LE MARAIS in connection with hotel and lodging services. In the same opinion appealed in this case, the Board reversed the PTO's decision to refuse registration of Les Halles' mark for hotel and lodging services. Les Halles did not appeal that decision. Therefore, this opinion only addresses Les Halles' application with regard to restaurant services.

diction over this appeal. 28 U.S.C. § 1295(a)(4)(B) (2000).

## II.

■ This court reviews the Board's "legal conclusions, such as its interpretations of the Lanham Act" without deference. *In re Hiromichi Wada*, 194 F.3d 1297, 1299 (Fed.Cir.1999). The Board's determination that a mark is primarily geographically deceptively misdescriptive is a factual finding, *see In re Compagnie Generale Maritime*, 993 F.2d 841, 845 (Fed.Cir. 1993), which this court upholds "unless ... unsupported by substantial evidence." *Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 1327 (Fed.Cir.2000).

This court recently addressed the legal standard for primarily geographically deceptively misdescriptive marks under section 2(e)(3). *See In re California Innovations, Inc.*, 329 F.3d 1334 (Fed.Cir.2003). In that case, this court took the opportunity provided by the NAFTA amendments to the Lanham Act to reexamine the legal test for geographically deceptively misdescriptive marks. *See* North American Free Trade Agreement, Dec. 17, 1992, art. 1712, 32 I.L.M. 605, 698, as implemented by NAFTA Implementation Act, Pub.L. No. 103–182, 107 Stat.2057 (1993). This court concluded that the test applied in the past overlooked that a mark only invokes the prohibitions of section 2(e)(3) by deceiving the public with a geographic misdescription. The NAFTA amendments placed the emphasis on the statutory requirement to show deception by imposing the same restrictions on section 2(e)(3) marks that apply to other deceptive marks. *California Innovations*, 329 F.3d at 1338–40. Thus, this court applied a test for section 2(e)(3) required by the statute with a focus on whether the public is deceived, rather than solely on whether the mark was distinctive. *Id.*

This court stated: "To ensure a showing of deceptiveness ... the PTO may not deny registration [under section 2(e)(3) ] without a showing that the goods-place association made by the consumer is material to the consumer's decision to purchase those goods." *Id.* at 1340. Under section 2(e)(3), therefore, a mark is primarily geographically deceptively misdescriptive if

(1) the primary significance of the mark is a generally known geographic location, (2) the consuming public is likely to believe the place identified by the mark indicates the origin of the goods [or services] bearing the mark, when in fact the goods [or services] do not come from that place, and (3) the misrepresentation was a material factor in the consumer's decision.

*Id.* at 1341.

While *California Innovations* involved a mark to identify the source of goods, the analysis under section 2(e)(3) applies to service marks as well. Application of the second prong of this test—the services-place association—requires some consideration. A customer typically receives services, particularly in the restaurant business, at the location of the business. Having chosen to come to that place for the services, the customer is well aware of the geographic location of the service. This choice necessarily implies that the customer is less likely to associate the services with the geographic location invoked by the mark rather than the geographic location of the service, such as a restaurant. In this case, the customer is less likely to identify the services with a region of Paris when sitting in a restaurant in New York.

■ Although the services-place association operates somewhat differently than a goods-place association, the second prong nonetheless continues to operate as part of the test for section 2(e)(3). In a case

involving goods, the goods-place association often requires little more than a showing that the consumer identifies the place as a known source of the product. *See In re Loew's Theatres, Inc.,* 769 F.2d 764, 767–69 (Fed.Cir.1985); *California Innovations,* 329 F.3d at 1340. Thus, to make a goods-place association, the case law permits an inference that the consumer associates the product with the geographic location in the mark because that place is known for producing the product. *Id.* In the case of a services-place association, however, a mere showing that the geographic location in the mark is known for performing the service is not sufficient. Rather the second prong of the test requires some additional reason for the consumer to associate the services with the geographic location invoked by the mark. *See In re Municipal Capital Markets, Corp.,* 51 USPQ2d 1369, 1370–71 (TTAB 1999) ("Examining Attorney must present evidence that does something more than merely establish that services as ubiquitous as restaurant services are offered in the pertinent geographic location."). Thus, a services-place association in a case dealing with restaurant services, such as the present case, requires a showing that the patrons of the restaurant are likely to believe the restaurant services have their origin in the location indicated by the mark. In other words, to refuse registration under section 2(e)(3), the PTO must show that patrons will likely be misled to make some meaningful connection between the restaurant (the service) and the relevant place.

For example, the PTO might find a services-place association if the record shows that patrons, though sitting in New York, would believe the food served by the restaurant was imported from Paris, or that the chefs in New York received specialized training in the region in Paris, or that the New York menu is identical to a known Parisian menu, or some other heightened association between the services and the relevant place. This court does not decide whether these similarities would necessarily establish a services-place association or presume to limit the forms of proof for a services-place association with these examples. Rather, this court only identifies some potential showings that might give restaurant patrons an additional reason beyond the mark itself to identify the services as originating in the relevant place.

This court recognizes that the standard under section 2(e)(3) is more difficult to satisfy for service marks than for marks on goods. In fact, for the reasons discussed above, geographic marks in connection with services are less likely to mislead the public than geographic marks on goods. Thus, a different application of the services-place association prong is appropriate, especially in the context of marks used for restaurant services—"some of the very most ubiquitous of all types of services." *Municipal Capital Markets,* 51 USPQ2d at 1370.

Beyond the second prong, however, the misleading services-place association must be a material factor in the consumer's decision to patronize the restaurant. This materiality prong, as noted by *California Innovations,* provides some measure for the statutory requirement of deception. *California Innovations,* 329 F.3d at 1340 (citing *In re House of Windsor,* 221 USPQ 53, 56–57 (TTAB 1983) for the materiality test). For goods, the PTO may raise an inference in favor of materiality with evidence that the place is famous as a source of the goods at issue. *See id.* at 1341.

To raise an inference of deception or materiality for a service mark, the PTO must show some heightened association between the services and the relevant geographic denotation. Once again, this court does not presume to dictate the form of this evidence. For restaurant services,

the materiality prong might be satisfied by a particularly convincing showing that identifies the relevant place as famous for providing the specialized culinary training exhibited by the chef, and that this fact is advertised as a reason to choose this restaurant. In other words, an inference of materiality arises in the event of a very strong services-place association. Without a particularly strong services-place association, an inference would not arise, leaving the PTO to seek direct evidence of materiality. In any event, the record might show that customers would patronize the restaurant because they believed the food was imported from, or the chef was trained in, the place identified by the restaurant's mark. The importation of food and culinary training are only examples, not exclusive methods of analysis, as already noted.

In this case, the PTO and the Board did not apply the necessary standard to conclude that Les Halles' mark is primarily geographically deceptively misdescriptive. The Board concluded that the mark is primarily geographic in nature, and that patrons of Les Halles' restaurant would believe the restaurant services bear some connection to the Le Marais area of Paris. The Board's decision, however, does not show a services-place association or the materiality of that association to a patron's decision to patronize Les Halles' restaurant. To be specific, the record does not show that a diner at the restaurant in question in New York City would identify the region in Paris as a source of those restaurant services. Further, the record does not show that a material reason for the diner's choice of this restaurant in New York City was its identity with the region in Paris. At best, the evidence in this record shows that Les Halles' restaurant conjures up memories or images of the Le Marais area of Paris. This scant association falls far short of showing a material services-place association. Accordingly, this court vacates the Board's

decision and remands for application of the appropriate standard in accordance with this opinion.

## COSTS

Each party shall bear its own costs.

*VACATED and REMANDED.*