THIS DISPOSITION IS
CITABLE AS PRECEDENT OF
THE TTAB

Mailed: August 25, 2004

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re Consolidated Specialty Restaurants, Inc.
————————

Serial No. 75857797
————————

Gregory B. Coy and Scott J. Stevens of Woodard, Emhardt, Moriarty, McNett & Henry, LLP for Consolidated Specialty Restaurants, Inc.

Michael J. Souders, Trademark Examining Attorney, Law Office 115 (Tomas Vlcek, Managing Attorney).
————————

Before Simms, Chapman and Holtzman, Administrative Trademark Judges.

Opinion by Chapman, Administrative Trademark Judge:

On November 24, 1999, Consolidated Specialty Restaurants, Inc. (an Indiana corporation) filed an application to register on the Principal Register the mark shown below



for "restaurant services." The application is based on applicant's claimed date of first use and first use in commerce of October 17, 1994.

When the Examining Attorney made final the refusal to register on the ground that the mark is primarily geographically deceptively misdescriptive of restaurant services under Section 2(e)(3) of the Trademark Act, 15 U.S.C. §1052(e)(3), applicant appealed.

The briefing of this case had just been completed when the Court of Appeals for the Federal Circuit issued its opinion in the case of In re California Innovations, Inc., 329 F.3d 1334, 66 USPQ2d 1853 (Fed. Cir. 2003) involving marks refused registration as primarily geographically deceptively misdescriptive. In view of the Court's decision, the Examining Attorney requested a remand of the application under Trademark Rule 2.142(d) for the purpose of reconsideration and application of the new standard to the facts of this application. The Board granted the request and remanded the application to the Examining Attorney, who, upon further consideration issued an Office action maintaining the refusal. Thereafter, the Board allowed both applicant and the Examining Attorney time to

submit substitute briefs on the case, all of which have now

been filed.[1]  Applicant did not request an oral hearing.

The North American Free Trade Agreement (NAFTA)

Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057

(1993) amended Section 2(e)(2) of the Trademark Act by

deleting reference to primarily geographically deceptively

misdescriptive marks; adding Section 2(e)(3) to the

---

[1] In the Examining Attorney's substitute brief on the case, he
reiterated his objection to new evidence which applicant had
included for the first time with its original brief on the case
(a printout of one third-party registration from the USPTO's
Trademark Electronic Search System (TESS).  The Examining
Attorney argues, inter alia, that he "had no opportunity to
consider the evidence and respond thereto."  In the circumstances
of this case, where the application was remanded to the Examining
Attorney after the original briefing of the case, it is clear
that the Examining Attorney, having objected thereto in his
original brief on the case, and having requested a remand of the
application, did have the opportunity to consider this evidence
and to respond thereto.  Accordingly, the Examining Attorney's
objection in the substitute brief is overruled.
  However, in the Board order dated October 7, 2003 it was clear
that if the refusal to register was maintained by the Examining
Attorney, then both applicant and the Examining Attorney would be
given time to file "substitute" (not supplemental) briefs; and
that applicant would be allowed to submit evidence with its
substitute brief on the case.  In the unusual circumstances of
this case, applicant could have included this document as an
attachment to its substitute brief, but for reasons unknown to
the Board, applicant chose not to do so.  Nonetheless, in the
interest of a full and fair adjudication of this case, the Board
will exercise its discretion and consider the third-party
registration submitted by applicant with its original brief on
the case.  (To be clear, we are not otherwise considering the
original briefs of applicant and the Examining Attorney.)
  Applicant submitted for the first time as attachments to its
substitute reply brief, printouts of three pages from three
websites.  This is clearly untimely and improper at this stage of
the appeal.  See Trademark Rule 2.142(d).  This evidence was not
considered by the Board.  Even if we had considered this
evidence, it would not alter our decision herein.

Trademark Act to prohibit registration of primarily

geographically deceptively misdescriptive marks; and

amending Section 2(f) of the Trademark Act to eliminate

primarily geographically deceptively misdescriptive marks

from becoming registrable via a showing of acquired

distinctiveness.[2]

The Court in In re California Innovations, Inc.,

supra, concluded that the standard for determining whether

a mark is primarily geographically deceptively

misdescriptive under the new Section 2(e)(3) of the Act is

different from, and more rigorous than, the standard for

determining registrability of the same types of marks under

Section 2(e)(2) of the Act prior to the NAFTA amendment.

The Court stated the following (66 USPQ2d at 1856):

> Thus, §1052 no longer treats geographically
> deceptively misdescriptive marks differently from
> geographically deceptive marks. … Accordingly,
> the test for rejecting a deceptively
> misdescriptive mark is no longer simple lack of

---

[2] Applicant's assertion that its mark has acquired
distinctiveness under Section 2(f) of the Trademark Act, 15
U.S.C. §1052(f), is unavailing due to the NAFTA Implementation
Act of 1993 amendments to the Trademark Act.  The NAFTA
amendments were enacted in 1993 and applicant's claimed date of
first use is October 17, 1994.  Therefore, applicant's mark could
not have become distinctive in connection with applicant's
restaurant services prior to the NAFTA amendments, making
applicant's mark ineligible for registration on the Principal
Register under Section 2(f) of the Trademark Act.  (We make clear
that we are not commenting on whether applicant has shown
acquired distinctiveness of this mark for these services as that
question is irrelevant in this case.)

distinctiveness, but the higher showing of deceptiveness.

The Court stated the following about the pre-NAFTA amendment requirement for a goods-place association (66 USPQ2d at 1857):

> Therefore, the relatively easy burden of showing a naked goods-place association without proof that the association is material to the consumer's decision is no longer justified, because marks rejected under §1052(e)(3) can no longer obtain registration through acquired distinctiveness under §1052(f). To ensure a showing of deceptiveness and misleading before imposing the penalty of non-registrability, the PTO may not deny registration without a showing that the goods-place association made by the consumer is material to the consumer's decision to purchase those goods. This addition of a materiality inquiry equates this test with the elevated standard applied under §1052(a).
>
> …
> This also properly reflects the presence of the deceptiveness criterion often overlooked in the "primarily geographically *deceptively* misdescriptive" provision of the statute.
>
> The shift in emphasis in the standard to identify primarily geographically deceptively misdescriptive marks under §1052(e)(3) will bring that section into harmony with §1052(a).
> (Italics emphasis in original.)

The Court articulated the following standard for determining whether a mark is primarily geographically deceptively misdescriptive (66 USPQ2d at 1858):

> Thus, due to the NAFTA changes in the Lanham Act, the PTO must deny registration under §1052(e)(3) if (1) the primary significance of the mark is a generally known geographic location, (2) the consuming public is likely to believe the place

5

identified by the mark indicates the origin of the goods bearing the mark, when in fact the goods do not come from that place, and (3) the misrepresentation was a material factor in the consumer's decision.

In a subsequent case, In re Les Halles De Paris J.V., 334 F.3d 1371, 67 USPQ2d 1539 (Fed. Cir. 2003), the Court discussed the application of the test for primarily geographically deceptively misdescriptive marks in the context of services instead of goods, stating (67 USPQ2d at 1541):

> Although the services-place association operates somewhat differently than a goods-place association, the second prong nonetheless continues to operate as part of the test for Section 2(e)(3).
> …
> In the case of a services-place association, however, a mere showing that the geographic location in the mark is known for performing the service is not sufficient. Rather, the second prong of the test requires some additional reason for the consumer to associate the services with the geographic location invoked by the mark.
> …
> Thus, a services-place association in a case dealing with restaurant services, such as the present case, requires a showing that the patrons of the restaurant are likely to believe the restaurant services have their origin in the location indicated by the mark. In other words, to refuse registration under Section 2(e)(3), the PTO must show that patrons will likely be misled to make some meaningful connection between the restaurant (the service) and the relevant place.
>
> For example, the PTO might find a services-place association if the record shows that patrons, though sitting in New York, would believe the food served by the restaurant was imported from

6

Paris,…, or some other heightened association between the services and the relevant place. …[T]his court only identifies some potential showings that might give restaurant patrons an additional reason beyond the mark itself to identify the services as originating in the relevant place.

Finally, the Court explained the third prong of the test in the context of services as follows (67 USPQ2d at 1542):

Beyond the second prong, however, the misleading services-place association must be a material factor in the consumer's decision to patronize the restaurant.
…
To raise an inference of deception or materiality for a service mark, the PTO must show some heightened association between the services and the relevant geographic denotation.
…
In other words, an inference of materiality arises in the event of a very strong services-place association. Without a particularly strong services-place association, an inference would not arise, leaving the PTO to seek direct evidence of materiality. In any event, the record might show that customers would patronize the restaurant because they believed the food was imported from, or the chef was trained in, the place identified by the restaurant's mark.

It is well established that the USPTO has the burden of establishing a *prima facie* case that the mark is primarily geographically deceptively misdescriptive. See In re Pacer Technology, 338 F.3d 1348, 67 USPQ2d 1629 (Fed. Cir. 2003) and cases cited therein.

7

The Examining Attorney contends that the primary significance of the term COLORADO in applicant's mark is geographic because it is the name of one of the 50 states of the United States; that there is a services-place association of "Colorado" with restaurants and particularly steakhouse restaurants because steaks from Colorado (i.e., "Colorado steaks") are known for their quality, and consumers patronizing applicant's restaurants in Indiana and Illinois are likely to believe that the steaks come from Colorado when they do not; and that the known quality of "Colorado steaks" will be a material factor in the purchasers' decisions to patronize applicant's restaurants.

In support of the Examining Attorney's refusal to register the mark under Section 2(e)(3) of the Trademark Act, he submitted (i) dictionary definitions of the words "Colorado" and "steakhouse"; (ii) printouts of pages from several different websites; and (iii) printouts of several excerpted stories retrieved from the Nexis database, the latter two groups of items to show that there are steakhouses in Colorado and that Colorado is noted for its steaks.

Examples of the Nexis and website evidence submitted by the Examining Attorney are reproduced below:

CitySpin.com
Travel First Class on the Web
Chicago, Illinois
La Strada Ristorante
Serving authentic fine Italian cuisine
for lunch and dinner since 1982, La
Strada features a décor with warm wood
surroundings, polished marble and a
handsome wine display.  Specialties
include prime Colorado steaks,….;

Chapparalsteakhouse.com
Orlando, Florida
The home of the six pound steak!
We at the Chapparal think big!…
So Come On, See If You're a Cowboy or a
Greenhorn!!!
Only the finest aged choice grade
Colorado steaks….;

ABC Good Morning America (7:00am ET)
January 29, 1999
Transcript # 99012916-j01
Headline:  Emeril's Tailgate Chili
Emeril Lagasse:  Let me tell you, we got
to get started.  I think before we do our
thing, you know I've got to show you some
great food.  The food is, we've got some
Denver Bronco kind of food.  Look at
that, Colorado steaks and chicken and –
oh, look at all that great stuff.….;

Headline:  Klug: Scandal to 'Hang Like
Cloud'
…Once connected, the two politicians
chatted briefly about their Super Bowl
bet of Colorado steaks for Wisconsin
cheese. … "Capital Times (Madison, WI),"
January 27, 1998;

Headline:  Rep. Deutsch Must Pay Up
…But the Florida Panthers lost in four
straight games to the Colorado Avalanche.
Now Deutsch must turn over a Florida Key
lime pie to Schroeder, who wagered a
Colorado steak dinner. … "The Hill
(Capitol Hill)," June 12, 1996;

9

Headline:  The Bet's On
Salt Lake City Mayor Deedee Corradini and Denver Mayor Wellington Webb have a little wager on the outcome of the Jazz-Nuggets playoffs.  If the Jazz win, Webb has promised a case of Colorado steaks. If Denver wins, The Dee will surrender salt water taffy, a ski lesson, a ski jump—and a surprise gift. …. "The Salt Lake Tribune," May 11, 1994;

Headline:  Andre Guerrero: Making Culinary Music at Duet
…Alice's Restaurant, Malibu; Brio, Los Angeles.  Opened Duet last summer. Menu sampler: Creamed corn with clams and ginger; risotto with king salmon and fired leeks; stir-fried sea scallops with angel hair pancake; grilled Colorado steak with soy-glazed red onions; curry marinated lamb chops. … "Nation's Restaurant News," April 4, 1994;

Headline:  Washington Talk: Briefing
…The next day, the two lawmakers posed on the capitol steps with symbols of their Superbowl bet: a Long Island duck dinner against a Colorado steak dinner.  Mr. D'Amato was accompanied by a live duck -- photographers demanded a left-to-right identification -- and Mr. Armstrong by a cow costume encompassing two members of his staff.  "The New York Times," January 25, 1987;

Headline:  Restaurants: New American and Old Provence Style
…Most of the main courses are cooked simply and garnished attractively, the best by far being Colorado steak with marrow and a clear sauce based on Sonoma Zinfandel.  Close seconds are roast baby chicken with herbs, tender roast veal with ginger and wild mushrooms, and a broiled lobster glossed with garlic and tarragon butter. …

> Recommended dishes: …vegetable soups,
> roast chicken, Colorado steak, roast
> veal, broiled lobster, hamburger, salmon
> filled with spinach mousse, roast lamb,
> …. "The New York Times," March 18, 1983;
>
> Headline: Splendor in Colorado's Grasses
> …a patio amid potted flowers and herbs,
> owner Ron Carlton, a graduate of the
> Culinary Institute of America, presented
> a five-course gourmet dinner, including
> poached salmon with penne pasta in a
> light cream sauce and Colorado rib-eye
> steak (fixed price: $22 each)…. "The
> Washington Post," September 2, 2001;
>
> Headline: Jeweler Rides Out the Storm
> …A sensational year,' said Allard, who
> stands to pick up a generous supply of
> New Jersey salt water taffy, calzones and
> M&M candies for the team's victory over
> the New Jersey Devils. He wagered a pack
> of Colorado steaks over the games with
> New Jersey's two senators. … "The Denver
> Post," June 12, 2001; and
>
> Headline: Corn Dance Cafe Charms Guests
> …Chef/owner Loretta Oden, who has run
> Corn Dance out of the hotel for four
> years since it left its downtown spot,
> gets the 8-ounce steaks from farm-raised
> Colorado stock. … "Albuquerque Journal,"
> January 19, 2001.

The Examining Attorney notes that applicant is headquartered in Indianapolis, Indiana; that applicant owns eight restaurants -- five located in cities in Indiana and three in cities in Illinois; and that applicant has indicated the beef served in its restaurants does not come from Colorado (see, e.g., applicant's substitute brief, p. 9).

11

Applicant argues that its mark is not primarily geographically deceptively misdescriptive of restaurant services as follows:

> The circumstances of Applicant's use of the COLORADO STEAKHOUSE (and Design) mark clearly show that the term COLORADO is meant to convey meaning as to the style of the restaurant rather than any meaning regarding geographic origin of the food or the service.  A purchaser or prospective purchaser of Applicant's restaurant services would believe that the term conveys the meaning that the restaurant services feature a Colorado-style theme, such as a Rocky Mountain or western atmosphere and/or a ski-lodge theme.

Applicant's response to the first Office action, p. 7.

Applicant further contends that in determining whether or not the place identified by the mark indicates the origin of the services, one must first consider how "origin of restaurant services" is defined; that the definition should not be limited to the physical location of the restaurant(s) but should also include (i) the location from which the restaurant concept or theme originates, (ii) the location from which recipes originate, and (iii) locations from which the food originates (applicant's response to the second Office action, p. 5); and that under this definition of "origin," applicant's services do in fact originate from Colorado because the restaurant theme/concept is "Colorado."  It is applicant's position that even under a more restrictive definition of "origin of the services,"

12

the purchasing public is not deceived by the geographical

place name in the mark because:

> [T]he public correctly understands that the one component of Applicant's restaurant services originating in Colorado is the restaurant concept or theme. … As a result of the proliferation of a wide variety of [themed] restaurants in the United States, consumers have learned to seek restaurant services featuring a specific cuisine, atmosphere, decor and/or mode of service, and to consider any geographic term in the name of a restaurant to indicate such. … [OUTBACK (style) STEAKHOUSE, BOSTON (style) CHICKEN, ARIZONA (style) CAFE, TEXAS (style) ROADHOUSE, CALIFORNIA (style) CAFE, CHINA (style) CAFETERIA].

Applicant's response to the second Office action, p. 7.

In its substitute brief on the case, applicant

summarizes the three reasons why it finds the refusal to

register is improper:

> (1) the Examining Attorney has focused on the evidence of "Colorado steaks," but he has not established a services-place association because "[a]bsent evidence proving that beef raised in Colorado is significantly higher in quality or more sought after than beef from any other state, i.e., proof that a customer could tell the difference and would be upset if he or she received a steak from a Texas-raised steer rather than a Colorado-raised steer, there is no basis to conclude that customers would expect or believe that the term 'COLORADO' in Applicant's mark means that only beef from Colorado-raised cattle is served in Applicant's restaurants." (pp., 7-8);

> (2) "the Examining Attorney has failed to establish a strong services-place association as required by the Court in [the California Innovations and Les Halles cases, supra]," and "[a]bsent such a showing, the only way for the

13

Examining Attorney to meet the third prong of the In re Halles test is to seek and present 'direct evidence of materiality,' i.e., direct evidence that the consumer's belief that the beef comes from Colorado is material to his or her decision to purchase restaurant services from Applicant," and there is no such direct evidence herein (p. 9); and

(3) "Applicant submits that consumers of its services are not deceived in any way by the presence of the term 'COLORADO' in its mark. In the present case, the style of cooking, the atmosphere, the concept, and at least some of the fixtures and decorations come from or originate in Colorado, and this is consistent with what consumers would expect." (p. 12).

In general, applicant contends that the Examining Attorney has failed to present evidence that satisfies the heightened standard now required in order to find that a mark is primarily geographically deceptively misdescriptive under Section 2(e)(3) of the Trademark Act.

In support of its position, applicant submitted into the record photocopies of menus used at applicant's restaurants; color reproductions of wall art displayed at applicant's restaurants (photographs of, for example, mountain scenery, people snow skiing down a mountain, a fisherman at a mountain creek); photocopies of three advertisements for applicant's restaurants; printouts from the USPTO's Trademark Electronic Search System (TESS) of five third-party registrations using geographic names to indicate the theme not the physical location of the

14

restaurants; and a report on cattle inventory issued by the National Agricultural Statistics Service of the United States Department of Agriculture (USDA).

In addition to the evidence and the arguments of applicant and the Examining Attorney, the Board takes judicial notice of the following dictionary and gazetteer information:[3]

> (1) **Colorado** …3. A west central state of U.S.A. … Chief products: Wheat, sugar beets, corn; livestock;…. Merriam-Webster's Geographical Dictionary (Third Edition 1997); and

> (2) **Colorado**, state, … W. central U.S., one of the Rocky Mt. States, …Agr., especially the raising of cattle and sheep is economically important in the state. The Columbia Gazetteer of North America (2000).

*Whether Primary Significance of Mark Is a Generally Known Geographic Location*

The record includes The American Heritage Dictionary of the English Language (Third Edition 1992) definitions of "Colorado" and "steakhouse":

> **Colorado** A state of the west-central United States. It was admitted as the 38th state in 1876. First explored by the Spanish in the 16th and 17th centuries, the region was added to the United States through the Louisiana Purchase (1803) and a cession by Mexico (1848). The Colorado Territory was organized in 1861. Denver

---

[3] See The University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983). See also, TBMP §704.12 (2d ed. rev. 2004).

> is the capital and the largest city.  Population 3,307,912.

> **steakhouse** (or steak house)  A restaurant that specializes in beefsteak dishes.

Applicant acknowledges that "Colorado" is the geographic place identified by its mark (e.g., applicant's substitute brief, pp. 3 and 5), and applicant does not argue that the first prong of the test has not been met. There is simply no doubt that the geographical significance of the term "COLORADO" is its primary significance, and it is neither remote nor obscure in the context of consumer awareness.  Neither the addition of the generic word "steakhouse" nor the addition of the design feature (including a mountain) detracts from the primary geographical significance of the mark.  See In re U.S. Cargo Inc., 49 USPQ2d 1702, 1704 (TTAB 1998); In re Bacardi & Co. Ltd., 48 USPQ2d 1031, 1034 (TTAB 1997, released 1998); and In re Carolina Apparel, 48 USPQ2d 1542, 1543 (TTAB 1998).  If anything, the mountain design in applicant's mark adds to the geographical significance relating to Colorado.

Thus, we find that the primary significance of the composite mark COLORADO STEAKHOUSE and design is a generally known geographic location.

*Services/Place Association*

The Examining Attorney contends that there are steakhouses in Colorado and he submitted some Internet and Nexis database evidence in support thereof.  As the Board stated in In re California Pizza Kitchen, 10 USPQ2d 1704, 1706-1707(TTAB 1988):  "[R]estaurant services are so ubiquitous and a state is such a large, significant geographic area that it can be treated as a matter of common knowledge that restaurant services are rendered throughout every state of the United States, including California."  While there is no doubt that restaurant services are offered in Colorado, the Court has made clear that "the second prong of the test requires some additional reason for the consumer to associate the services with the geographic location invoked by the mark" and, specifically with regard to restaurant services, that "the PTO must show that patrons will likely be misled to make some meaningful connection between the restaurant (the service) and the relevant place."   In re Les Halles, 67 USPQ2d at 1541.

Here we find that the Examining Attorney has established an "additional reason" beyond the mark itself to identify the services as originating in the place named. Specifically, the gazetteer and geographic dictionary entries, the USDA report, the evidence from the Internet

and the excerpted stories retrieved from the Nexis database show that the state of Colorado is known for its steaks. The Internet and Nexis references show that "Colorado steaks" are featured food items in restaurants not only within the state of Colorado but outside the state as well, and that politicians use "Colorado steaks" as the basis for their wagers. These references from the press show that the general public is or has been made aware of "Colorado steaks." It is a fair inference or conclusion that politicians would not make wagers unless his or her locale were well known for the subject matter of the bet. Therefore, consumers will believe, mistakenly, that the steaks served at applicant's steakhouse restaurants come from Colorado, when they do not. In In re Les Halles, supra, the Court of Appeals for the Federal Circuit included in its non-exhaustive list of examples of how the USPTO might establish the heightened services/place association, a showing that patrons would believe the food served by the restaurant was from the place named in the mark. That is precisely what the Examining Attorney has established herein. See also, In re Save Venice New York Inc., 259 F.3d 1346, 59 USPQ2d 1778 (Fed. Cir. 2001). The Examining Attorney's evidence shows that steaks from Colorado are served in other locations, such that out-of-

state consumers would reasonably believe a "Colorado Steakhouse" served Colorado beef, regardless of the restaurant's location.

Applicant contends that "it is clear from [the USDA cattle inventory report] that, based on cattle population, Colorado is not a particularly large source of beef." (Applicant's substitute brief, p. 7, footnote 1.) However, to the contrary, the USDA cattle inventory report identifies Colorado as one of the 11 top producing cattle states in the United States.[4] Even if Colorado is 11th in cattle production, that does not mean that Colorado steaks are lesser known than steaks from some of the other top 11 cattle producing states.

Thus, the heightened association required by the Court between the services and the place named in the mark has been met. We find sufficient evidence herein to conclude that a services/place association is likely to be made by purchasers between COLORADO and the restaurant services identified in this application.

We note that applicant argues that third-party registrations for marks such as OUTBACK STEAKHOUSE, THE

---

[4] The report breaks down the numbers of cattle for the 50 states by listing 11 states separately (including Colorado) and then "Oth Sts" (presumably a composite number for the remaining 39 states) and then "US" (totals). From this it is clear that Colorado is in the top 11 cattle producing states.

19

CLADDAGH IRISH PUB, TEXAS ROADHOUSE, CHINA STAR and CHINA BOWL (all for restaurant services), show that "a customer who visits a restaurant having a geographic name and theme is expecting to find an atmosphere, ambience or décor that suggests to them the type of restaurant they would expect to find in the particular city or region identified in the name"; and that "the name, therefore, provides an association with the geographic identifier by way of its concept or theme only…" (Applicant's request for reconsideration, unnumbered pages 2 and 3-4.) We disagree with applicant that the existence of these five third-party registrations establishes what consumers perceive or expect regarding the ambiance and décor of restaurants. Moreover, this evidence does not rebut the Examining Attorney's evidence showing that Colorado is known for its steaks, making applicant's mark, COLORADO STEAKHOUSE and design, primarily geographically deceptively misdescriptive of applicant's services.

In any event, this third-party registration evidence is not persuasive of a different result in this case. While uniform treatment under the Trademark Act is an administrative goal, the Board's task in an ex parte appeal is to determine, based on the record before us, whether applicant's mark is primarily geographically deceptively

misdescriptive. As often noted by the Board, each case must decided on its own merits. We are not privy to the records of the third-party registration files and, moreover, the determination of registrability of those particular marks by the Examining Attorneys cannot control our decision in the case now before us. See In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to [applicant's application], the PTO's allowance of such prior registrations does not bind the Board or this court.")

*Materiality of Geographic Misrepresentation to Purchasing Decision*

Also clear from the Court's guidance in the California Innovations and the Les Halles cases, supra, is that the misleading services/place association must be a material factor in the customer's decision to patronize applicant's restaurant. In the Les Halles case, the Court explained that an inference of materiality arises where there is a showing of a "heightened association" between the services and the geographic place or, in other words, a showing of "a very strong services-place association." In this case, a very strong services-place association has been shown. The evidence discussed above clearly establishes that

Colorado is known for its steaks and that the public is aware of the connection of Colorado with high quality steak (or beef). That is, as shown by the Nexis stories and Internet evidence about restaurants (not located in Colorado) touting that they serve Colorado steaks, politicians from Colorado wagering Colorado steaks in the same way that politicians from other states wager their known "home" products (e.g., Wisconsin cheese, Florida Key lime pie), and chefs discussing the value of Colorado steaks, it is clear that Colorado is known for its steaks. Again, the Court included in its non-exhaustive list of examples of how the USPTO might establish this "very strong services-place association" a showing that customers would patronize the restaurant because they believed the food came from the place named. In re Les Halles, supra. As explained above, the Examining Attorney has established a prima facie case of exactly that--customers would believe that applicant's steakhouse restaurants serve Colorado steaks, when applicant does not.

Based on the record before us we find that the Examining Attorney has established the third necessary factor, that the misrepresentation is a material factor in consumers' purchasing decisions.

We have considered applicant's assertion that the "Colorado-style" theme/concept (e.g., the atmosphere and ambiance) of its restaurants "satisfies the customers' expectation of what the restaurant's name suggests," and therefore consumers "are not deceived in any way by the presence of the term 'COLORADO' in its mark." Applicant's substitute brief, p. 12. However, this is simply attorney argument without support in the record, and therefore does not overcome the prima facie case. To the extent the copies of menus and wall art from applicant's steakhouses relate specifically to Colorado, they serve to strengthen the association of applicant's restaurants/steakhouses with Colorado, thereby enhancing the geographically deceptively misdescriptive nature of applicant's mark since Colorado steaks are not served in applicant's steakhouses.[5]

**Decision:** The refusal to register under Section 2(e)(3) of the Trademark Act is affirmed.

---

[5] Applicant's argument that the geographic term "COLORADO" describes a "style of cooking" is unsupported by any evidence. See In re Wada, 194 F.3d 1297, 52 USPQ2d 1539 (Fed. Cir. 1999).