# United States Court of Appeals for the Federal Circuit

---

## IN RE MIRACLE TUESDAY, LLC

---

2011-1373

(Serial No. 77/649,391)

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

---

Decided: October 4, 2012

---

PAUL D. SUPNIK, of Beverly Hills, California, argued for appellant.

CHRISTINA J. HIEBER, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With her on the brief were RAYMOND T. CHEN, Solicitor, and ROBERT J. MCMANUS, Associate Solicitor. Of counsel was THOMAS V. SHAW.

---

Before RADER, *Chief Judge*, LINN and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Miracle Tuesday LLC ("Miracle Tuesday") appeals from a decision of the Trademark Trial and Appeal Board

("the Board") which affirmed the trademark examining attorney's refusal to register the mark JPK PARIS 75 and design on grounds that it is primarily geographically deceptively misdescriptive under Section 2(e)(3) of the Lanham Act, 15 U.S.C. § 1052(e)(3). *In re Miracle Tuesday, LLC*, No. 77649391, 2011 TTAB LEXIS 32 (TTAB Feb. 3, 2011) ("*Board Decision*"). Because we find that the Board's refusal to register the mark was based on substantial evidence, we affirm.

### BACKGROUND

On January 14, 2009, Miracle Tuesday filed an intent-to-use application with the United States Patent and Trademark Office ("PTO") seeking to register the mark JPK PARIS 75 and design, shown below, in connection with sunglasses, wallets, handbags and purses, travel bags, suitcases, belts, and shoes[1]:



The letters "JPK" are the initials of Jean-Pierre Klifa, who is the manager of Miracle Tuesday and designer of the goods at issue.

---

[1] Miracle Tuesday disclaimed the exclusive right to use "Paris."

In support of its registration application, Miracle Tuesday submitted four articles discussing consumer purchasing decisions and a declaration from Mr. Klifa. The declaration explained that Mr. Klifa is a French citizen who lived in Paris for approximately twenty-two years until 1986, and currently resides in the United States. Although Mr. Klifa indicated in his declaration that he exhibited at two trade shows while in Paris, he did not identify which goods he exhibited at those shows.

On July 23, 2009, the examining attorney issued a final decision refusing to register the mark on grounds that it was "primarily geographically deceptively misdescriptive" in relation to the identified goods.[2] In that decision, the examiner found that: (1) the primary significance of the mark is Paris; and (2) Paris is famous for fashion, including the types of fashion accessories identified in the application. Turning to the origin of the goods identified, the examiner found that the *only* connection between the goods and Paris is that Mr. Klifa is Parisian. Because Paris is famous as a source of the goods at issue, the examiner found that the misrepresentation regarding the geographic origin of the goods would be a material factor in a significant portion of the relevant consumers' decision to buy the goods.

Miracle Tuesday appealed the examiner's refusal to register the mark to the Board and the Board affirmed. First, the Board pointed to several undisputed facts, including that: (1) Paris is a well-known city in France and is a center of design and fashion; (2) Miracle Tuesday is a Nevada limited liability company with its primary

---

[2]    The phrase "primarily geographically deceptively misdescriptive" is a statutory term of art in the trademark context; we neither take responsibility for nor endorse the split infinitives or absence of necessary commas its use in this opinion requires.

place of business in Miami, Florida; (3) Mr. Klifa once lived in Paris but now resides in the United States, and has done so for some time; and (4) Mr. Klifa designs handbags.

Turning to the primary significance of the mark, the Board rejected Miracle Tuesday's argument that the monogram "JPK" is the dominant portion of the mark. Instead, the Board found that the designation "Paris" in the mark "serves to identify the geographic origin of the products" such that "consumers seeing applicant's products bearing applicant's mark will assume that such products have a connection with Paris either in their manufacture or their design." *Board Decision*, 2011 TTAB LEXIS 32, at *5. The Board also rejected Miracle Tuesday's argument that there is a connection between the goods identified in the application and Paris solely because Mr. Klifa once lived and worked there. Finally, the Board found the evidence sufficient to show that a substantial portion of relevant consumers would be deceived into believing that the goods came from Paris. Accordingly, the Board found that the mark JPK PARIS 75 and design is primarily geographically deceptively misdescriptive as applied to Miracle Tuesday's goods.

Miracle Tuesday timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Under Section 2(e)(3) of the Lanham Act, a mark may not be registered on the principal register if the mark, "when used on or in connection with the goods of the applicant is primarily geographically deceptively misdescriptive of them." 15 U.S.C. § 1052(e)(3). A mark is primarily geographically deceptively misdescriptive, and thus barred from registration, if: (1) "the primary significance of the mark is a generally known geographic loca-

tion"; (2) "the consuming public is likely to believe the place identified by the mark indicates the origin of the goods bearing the mark, when in fact the goods do not come from that place"; and (3) "the misrepresentation was a material factor in the consumer's decision" to purchase the goods. *In re Cal. Innovations, Inc.*, 329 F.3d 1334, 1341 (Fed. Cir. 2003).

Whether a mark is primarily geographically deceptively misdescriptive is a question of fact. *In re Save Venice N.Y., Inc.*, 259 F.3d 1346, 1351 (Fed. Cir. 2001). We review the Board's factual findings for substantial evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003) (citation omitted). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted).

On appeal, Miracle Tuesday does not challenge the Board's finding that the primary significance of the mark is Paris; it focuses its arguments on the second and third elements of the Board's Section 2(e)(3) refusal. Specifically, Miracle Tuesday argues that the Board erred when it: (1) found that the goods identified do not originate in Paris even though the designer of the goods has significant ties to Paris; (2) applied the wrong standard in concluding that the use of the word Paris in the mark is deceptive; and (3) failed to consider certain material evidence in reaching its decision. For the reasons explained below, each of these arguments lacks merit.

## A. Association & Origin

Because Miracle Tuesday does not challenge the Board's determination as to the first element of a Section 2(e)(3) refusal, we turn directly to the second element which asks "whether the public would reasonably identify

or associate the goods sold under the mark with the geographic location contained in the mark." *Save Venice N.Y.*, 259 F.3d at 1353-54. This element involves two questions: (1) whether there is an association between the goods and the place identified ("a goods/place association"); and (2) whether the applicant's goods in fact come from that place. *See Cal. Innovations*, 329 F.3d at 1341 (the PTO must ask whether "the consuming public is likely to believe the place identified by the mark indicates the origin of the goods bearing the mark, when in fact the goods do not come from that place").

As to the first inquiry, the examiner has the initial burden of submitting evidence to establish a goods/place association and the burden then shifts to the applicant to rebut this showing with evidence "that the public would not actually believe the goods derive from the geographic location identified by the mark." *Save Venice N.Y.*, 259 F.3d at 1354. This court has explained that the PTO is not required to establish an "*actual* goods/place association." *Pacer Tech.*, 338 F.3d at 1351 (emphasis added). Instead, the PTO need only "establish 'a *reasonable predicate* for its conclusion that the public would be *likely* to make the particular goods/place association on which it relies.'" *Id.* (emphasis in original) (quoting *In re Loew's Theatres, Inc.*, 769 F.2d 764, 768 (Fed. Cir. 1985)).[3]

Where, as here, a case involves goods rather than services, we have held that "the goods-place association often requires little more than a showing that the consumer identifies the place as a known source of the product." *In*

---

[3]   Although *Loew's Theatres* was decided before the Lanham Act was amended to incorporate relevant provisions of the North American Free Trade Agreement ("NAFTA"), this court, in *Pacer Technology*, indicated that "the reasoning and holding in *Loew's* remains unchanged by NAFTA." *Pacer Tech.*, 338 F.3d at 1351 n.1.

*re Les Halles de Paris J.V.*, 334 F.3d 1371, 1374 (Fed. Cir. 2003) (citations omitted). Therefore, to establish a goods/place association, "the case law permits an inference that the consumer associates the product with the geographic location in the mark because that place is known for producing the product." *Id.* (citation omitted).

It is undisputed that Paris is famous for fashion and fashion accessories, including the types of goods identified in the application. Because relevant purchasers are likely to think of Paris as a known source for fashion accessories, we agree with the Board that there is sufficient evidence of a goods/place association between Paris and the goods listed.

The second inquiry under this element asks whether the goods will in fact originate from the named place. It is undisputed that goods may be deemed to originate in a geographic location if they are manufactured there. Origin can be predicated on factors other than manufacture, however, where the circumstances justify such a connection. *See Corporacion Habanos S.A. v. Anncas Inc.*, 88 U.S.P.Q.2d 1785, 1791 (TTAB 2008) ("[A] product may be found to originate from a place, even though the product is manufactured elsewhere."). Indeed, at oral argument, the PTO conceded that, in appropriate circumstances, "the place of design can be enough." *See* Oral Argument at 17:58, *available at* http://www. cafc.uscourts.gov/oral-argument-recordings/2011-1373/all. Similarly, if the goods contain a main component or ingredient from the place identified in the mark, that connection can be sufficient to find that the goods originate from that place. *See Corporacion Habanos*, 88 U.S.P.Q.2d at 1791 ("[A] product might be found to originate from a place where the main component or ingredient was made in that place." (citation omitted)); *see also Loew's Theatres*, 769 F.2d at 768 (evidence that tobacco is

"one in a short list of principal crops" in Durango, Mexico was sufficient to show that the public would likely believe that chewing tobacco under the mark DURANGO originated there). And, a product might be found to originate from a place where the applicant has its headquarters or research and development facilities, even when the manufacturing facilities are elsewhere. *See In re Nantucket Allserve, Inc.*, 28 U.S.P.Q.2d 1144, 1145-46 (TTAB 1993) (identifying Nantucket as the principal origin of applicant's products, even though the goods were manufactured elsewhere, because the company had its headquarters and research and development center on Nantucket).

Here, the Board found that Miracle Tuesday is located in Miami, its designer is not located in Paris, and the goods at issue are designed and produced somewhere other than Paris. The Board rejected Miracle Tuesday's argument that the fact that Mr. Klifa lived and worked in Paris for twenty-two years is sufficient to justify the conclusion that the products originated in Paris. The Board concluded that, "[a]lthough Mr. Klifa may still consider himself to be Parisian, the goods that applicant seeks to register are not because there is no current connection between the goods and Paris." *Board Decision*, 2011 TTAB LEXIS 32, at *7.

On appeal, Miracle Tuesday argues that the Board took an overly restrictive view of the word "originates." Specifically, it argues that its designer – Mr. Klifa – has a significant connection with Paris and that customers are more interested in the designer's origin than the origin of the goods themselves. In support of this position, Miracle Tuesday references red carpet events where interviewers ask celebrities "who are you wearing?" rather than "where was it made?"

Regardless of whether today's consumers consider and care about the origin of the designer of the goods they purchase, the relevant inquiry under the statute is whether there is a connection between the *goods* and Paris – not between the designer and Paris. *See* 15 U.S.C. § 1052(e)(3) (a mark is not registrable if, "when used on or in connection with the *goods* of the applicant is primarily geographically deceptively misdescriptive of them") (emphasis added). Accordingly, the fact that Mr. Klifa lived in Paris over twenty-five years ago is insufficient to establish that the goods to now be marketed under the proposed mark originate there. On this record, there is no evidence that Mr. Klifa's activities while he lived in Paris had anything to do with designing handbags or the other goods identified in the application. Nor is there any evidence that Mr. Klifa exhibited any of the types of goods at issue at the Parisian trade shows he attended. Given the statutory focus on the geographic origin of the goods, Miracle Tuesday's attempts to shift the inquiry to the historical origin of the designer must fail.

Although there is support for the proposition that goods need not be manufactured in the named place to originate there – and we do not endorse application of a contrary rule here – it is clear that there must be some other direct connection between the goods and the place identified in the mark (*e.g.*, the place identified is where the goods are designed or distributed, where the applicant is headquartered or has its research and development facility, or where a main component of the good originates). Here, Miracle Tuesday concedes that the goods identified in the application do not originate in Paris. Indeed, at oral argument, counsel for Miracle Tuesday revealed that the goods at issue "are made outside the United States, in Asia." *See* Oral Argument at 3:03. The record further reveals that the goods identified are de-

signed in Miami, and there is no evidence that a main component of the goods, or even any component of the goods, comes from Paris. Simply put, there is no evidence of a current connection between the goods and Paris.

Given that Paris is a world-renowned fashion center and is well-known as a place where fashion goods and accessories are designed, manufactured, and sold, we agree with the Board that "the relevant public would likely believe that [Miracle Tuesday's] products offered under the mark JPK PARIS 75 and design come from Paris (*i.e.*, that a goods/place association exists) when in fact the goods will not come from that place." *Board Decision*, 2011 TTAB LEXIS 32, at *8.[4] And, because there is no evidence showing a direct connection between Miracle Tuesday's goods and Paris, the Board properly found that there is insufficient evidence that the goods originate in Paris.

## B. Materiality

The third and final element of a Section 2(e)(3) refusal focuses on materiality and asks "whether a substantial portion of the relevant consumers is likely to be deceived" by the mark's misrepresentation of a goods/place association. *In re Spirits Int'l, N.V.*, 563 F.3d 1347, 1353 (Fed. Cir. 2009). In *Spirits International*, we held that, "to establish a prima facie case of materiality there must be some indication that a substantial portion of the relevant consumers would be materially influenced in the decision to purchase the product or service by the geographic meaning of the mark." *Id.* at 1357. We have also held that "the PTO may raise an inference in favor of material-

---

[4] The record does not disclose the significance of the number "75" in the proposed mark. Neither party argues that its presence is meaningful to the Board's Section 2(e)(3) rejection.

ity with evidence that the place is famous as a source of the goods at issue." *Les Halles de Paris*, 334 F.3d at 1374.[5]

Applying these standards, the Board stated that:

Because we have determined that the primary significance of Paris to the relevant public is the geographic place, and in view of the renown and reputation of fashion designs originating in Paris, we may infer that at least a substantial portion of consumers who encounter applicant's mark featuring the word "Paris" on applicant's products are likely to be deceived into believing that those products come from or were designed in Paris.

*Board Decision*, 2011 TTAB LEXIS 32, at *9. Accordingly, the Board found that the materiality factor was satisfied.

On appeal, Miracle Tuesday argues that the Board applied the wrong standard for materiality and that it was required to find that the use of the word Paris "does in fact deceive the public." Appellant's Br. 14. According to Miracle Tuesday, because there is a substantial connection between Mr. Klifa and Paris, the reference to Paris in the mark is a true statement that is not deceptive. Miracle Tuesday's arguments are without merit.

First, Miracle Tuesday points to our decision in *Les Halles de Paris* as evidence that the PTO "must show some heightened standard to show a false association between the services and the relevant geographic loca-

---

[5] Although *Les Halles de Paris* was decided before this court clarified the materiality standard in *Spirits International*, nothing in *Spirits International* suggests that there must be actual evidence of deception rather than an inference of materiality drawn from the evidence.

tion." Appellant's Reply 6. Miracle Tuesday's argument is fundamentally flawed, however, given that this case involves a mark to identify goods whereas *Les Halles de Paris* involved an application to register a mark for restaurant services. Indeed, in *Les Halles de Paris*, we specifically recognized that: (1) "the standard under section 2(e)(3) is more difficult to satisfy for service marks than for marks on goods"; and (2) "geographic marks in connection with services are less likely to mislead the public than geographic marks on goods." *Les Halles de Paris*, 334 F.3d at 1374.[6] Given these differences, we drew a distinction between the evidence necessary to give rise to an inference of materiality for goods and that necessary to give rise to that same inference for services. Although for *goods*, evidence that a place is famous as a source of those goods is sufficient to raise an inference of materiality, when dealing with *service* marks, we held that there must be a heightened association between the services and geographic location. *See id.* at 1374-75 ("In other words, an inference of materiality arises in the event of a very strong services-place association. Without a particularly strong services-place association, an inference would not arise, leaving the PTO to seek direct evidence of materiality."). Because this case involves goods – rather than services – Miracle Tuesday's reliance

---

[6] In *Les Halles de Paris*, we explained that a "customer typically receives services, particularly in the restaurant business, at the location of the business." 334 F.3d at 1373. "Having chosen to come to that place for the services, the customer is well aware of the geographic location of the service. This choice necessarily implies that the customer is less likely to associate the services with the geographic location invoked by the mark rather than the geographic location of the service, such as a restaurant." *Id.*

on the portion of *Les Halles de Paris* creating a heightened standard for service marks is misplaced.[7]

As the Board correctly noted, the fact that Paris is famous for fashion and design gives rise to an inference that a substantial portion of relevant customers would be deceived into thinking the goods identified came from Paris. Miracle Tuesday points to no evidence that would rebut this inference. Instead, as noted above, Miracle Tuesday maintains that customers care more about the origin of the designer than the origin of the goods and seems to argue that, where the mark involves a fashion designer, it should be treated as a service mark, with an attendant heightened level of materiality required. *See* Appellant's Br. 16 ("The relationship of the designer to Paris [is] not so far from a service performed by the designer, much as a restaurant service where a heightened materiality test is required."). Miracle Tuesday cites no authority for this proposition and ignores the fact that its application for registration is directed to goods, not services. Because our analysis must focus on the information provided in the application, Mr. Klifa's early years in

---

[7]    Miracle Tuesday also argues that "the effect of NAFTA was to impose a heightened materiality test" such that "a mark may only be rejected if there is true fraud or deceptiveness in the mark." Appellant's Br. 12. Although Miracle Tuesday is correct that the materiality prong of the Section 2(e)(3) inquiry was added after NAFTA, nothing contained therein or in our subsequent case law suggests that there must be actual evidence of deception rather than an inference from the evidence. Indeed, this court's decision in *California Innovations*, which recognized that NAFTA amended the Lanham Act to add a materiality inquiry, predates our decision in *Les Halles de Paris* where we said that the PTO can raise an inference of materiality with evidence that the place identified in the mark is famous as a source of the goods at issue. *Les Halles de Paris*, 334 F.3d at 1374.

Paris are effectively irrelevant, and certainly insufficient to overcome a proper inference of materiality.

For all of these reasons, we agree with the Board that the geographic misrepresentation in the mark is material and would deceive a substantial portion of the relevant consumers regarding the source of the goods outlined in the application.

## C.  Evidentiary Issue

Finally, Miracle Tuesday argues the Board failed to consider certain scholarly articles it submitted regarding consumer purchasing decisions and "country of origin" issues.  Because the Board did not specifically refer to the articles in its decision, Miracle Tuesday assumes that they were not considered.  According to Miracle Tuesday, the articles "show that customers are not necessarily concerned about the country of origin or country of manufacture of a product, but other features of the product, which in this particular instance arguably includes 'source' of the designer, or 'origin' of the designer . . . ." Appellant's Br. 24.

In response, the PTO argues that the articles "are irrelevant to the proper statutory inquiry of whether the goods come from the place named by the mark" and thus the Board "had no obligation to address them in its decision."  Appellee's Br. 15, n.7.  The PTO further argues that the Board fully considered Miracle Tuesday's theory that goods need not be manufactured in a place to originate there.  We agree with the PTO on both points.

First, as previously discussed, the relevant inquiry under the statute focuses on the origin of the goods – not the origin of the designer.  Second, the mere fact that the Board did not recite all of the evidence it considered does not mean the evidence was not, in fact, reviewed.  *See*

*Plant Genetic Sys., N.V. v. Dekalb Genetics Corp.*, 315 F.3d 1335, 1343 (Fed. Cir. 2003) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise.") (citation and internal quotation marks omitted).  And, as the PTO argues, it is clear that the Board fully considered Miracle Tuesday's theory of the word "originate."  *See Board Decision*, 2011 TTAB LEXIS 32, at \*6-7 (considering and rejecting the argument that, "because the creative force behind applicant's products lived and worked in Paris for 23 years, the Board should consider the design of applicant's products as having originated in Paris").  Accordingly, we find that Miracle Tuesday's evidentiary challenge lacks merit.

CONCLUSION

For the foregoing reasons, and because we find that Miracle Tuesday's remaining arguments are without merit, we affirm the Board's refusal to register the mark JPK PARIS 75 and design under Section 2(e)(3).

**AFFIRMED**