**In re JACQUES BERNIER, INC.**

No. 89–1457.

United States Court of Appeals, Federal Circuit.

Jan. 24, 1990.

Marshall A. Burmeister, Burmeister, York, Palmatier, Hamby & Jones, Chicago, Ill., argued for appellant.

Linda M. Skoro, Asst. Sol., Arlington, Va., argued for appellee. With her on the brief was Fred E. McKelvey, Sol.

Before MARKEY, Chief Judge, FRIEDMAN, Senior Circuit Judge,* and MAYER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board (Board) refusing to register on the primary register the mark RODEO DRIVE for perfume. The Board held that the mark was unregisterable under section 2(e)(2) of the Lanham Act, 15 U.S.C. § 1052(e)(2) (1988), because the mark is "primarily geographically descriptive or deceptively misdescriptive as applied to the goods." *In re Jacques Bernier, Inc.*, 10 USPQ2d 1955, 1956 (TTAB 1989). We reverse.

I

Although the procedural history of this case is complicated, for the purpose of resolving the dispute before us the relevant facts may be stated simply.

The appellant, Jacques Bernier, Inc. (Bernier), filed an application to register on the primary register the mark RODEO DRIVE for perfume.

Rodeo Drive is a shopping center located in Beverly Hills, California. Although there are many locations called "Rodeo Drive" in the United States, the most famous one is that in Beverly Hills. The Board found that Rodeo Drive is "a geographic location which is well known for expensive stores selling costly consumer items such as clothing, perfume and jewelry to a wealthy, chic and/or famous clientele." *Bernier*, 10 USPQ2d at 1956. We use "Rodeo Drive" to refer to the Beverly Hills street.

Bernier concedes that its perfume is not manufactured, produced, or sold on Rodeo Drive, either in Beverly Hills or elsewhere.

The Board sustained the examining attorney's refusal to register RODEO DRIVE, under section 2(e)(2) of the Lanham Act. The Board held that "the name [RODEO DRIVE] is primarily geographically descriptive and should remain available for use on other such goods to indicate geographic origin," 10 USPQ2d at 1957, and that because "the designation 'RODEO DRIVE' would be understood as describing the geographical source of these goods, its use on goods which have a different source is geographically deceptively misdescriptive." *Id.*

II

Section 2(e)(2) of the Lanham Act provides:

No trade-mark ... shall be refused registration on the principal register on account of its nature unless it—

. . . . .

(e) Consists of a mark which, ... (2) when used on or in connection with the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them....

15 U.S.C. § 1052(e)(2) (1988).

Section 2(e)(2) thus bars the registration of a trademark on the principal register if the mark is either "primarily geographically descriptive," or "primarily geographically deceptively misdescriptive." *Compare In re Societe Generale des Eaux Mine-*

* Judge Friedman took senior status on November   1, 1989.

*rales De Vittel, S.A.*, 824 F.2d 957, 3 USPQ2d 1450 (Fed.Cir.1987) (VITTEL for mineral water is not "primarily geographically descriptive") *with In re Loew's Theaters, Inc.*, 769 F.2d 764, 226 USPQ 865 (Fed.Cir.1985) (DURANGO for chewing tobacco is "primarily geographically deceptively misdescriptive"); *In re Nantucket, Inc.*, 677 F.2d 95, 213 USPQ 889 (CCPA 1982) (NANTUCKET for shirts is not "primarily geographically deceptively misdescriptive"). *See also* 1 J.T. McCarthy, *Trademarks & Unfair Competition*, § 14:10, at 646–47 (2d ed.1984).

The distinction between these two grounds turns upon the factual inquiry whether the source of the goods is the geographic region named in the mark. Although in the present case the Board's decision was based on both grounds, there is no contention before us that Bernier's perfume is made or sold on Rodeo Drive. Accordingly, the only issue before us, and the only one the parties have argued, is whether the mark is "primarily geographically deceptively misdescriptive" when applied to Bernier's perfume.

█ To establish a *prima facie* case for refusal to register a mark as "primarily geographically deceptively misdescriptive," it is not sufficient for the Patent and Trademark Office (PTO) to establish simply that the mark is the name of a place known generally by the public. *Nantucket*, 677 F.2d at 99, 213 USPQ at 892. *See also* 1 J.T. McCarthy, *supra*, at 647 ("The 1946 Lanham Act ... steered away from the prior practice ... of looking a word up in an atlas or gazetteer and then refusing registration if there was any place on earth called by that word.") (earlier edition cited in *Nantucket*, 677 F.2d at 99, 213 USPQ at 892). The PTO also must establish that "the public associates the goods with the place which the mark names." *Nantucket*, 677 F.2d at 99, 213 USPQ at 893. *See also Societe Generale*, 824 F.2d at 959, 3 USPQ2d at 1452 ("[I]t is also necessary to show that the public would make a goods/place association...."). Thus, the word "primarily" in section 2(e)(2) shows that "the intent of the federal statute [is

not] to refuse registration of a mark where the geographic meaning is minor, obscure, remote, or unconnected with the goods." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486, 168 USPQ 609, 612–13 (5th Cir.1971) (*quoted in Nantucket*, 677 F.2d at 99, 213 USPQ at 893).

█ As the Board noted, the case law shows numerous instances where the goods/place association is not the "primary" meaning a mark connotes. 10 USPQ2d at 1956. For example, a geographic mark may indicate that a product is stylish or of high quality, *i.e.*, HYDE PARK or NANTUCKET for clothing, and FIFTH AVENUE for a car. The use of the geographic location may be arbitrary or fanciful, *i.e.*, DUTCH BOY for paint. The geographic location may represent some important characteristic of the climate of the region which the applicant wishes to relate to the goods, *i.e.*, ANTARCTICA for soft drinks. In the present case, Bernier contends that the mark RODEO DRIVE, like HYDE PARK, NANTUCKET, and FIFTH AVENUE, indicates the high quality and not the geographic origin of the product. *See Nantucket*, 677 F.2d at 100–01, 213 USPQ at 893–94.

For the mark RODEO DRIVE to be "primarily geographically deceptively misdescriptive," Rodeo Drive itself would have to be associated with the product in such a way that the consuming public would be likely to assume that Rodeo Drive was the place in which the perfume originated. Nothing in the record, however, indicates or even suggests that the consuming public would believe that Rodeo Drive was the place of manufacture or production of the perfume. Indeed, there is no indication that any perfume is manufactured or produced on Rodeo Drive.

The Board apparently recognized that the mark RODEO DRIVE does not suggest that Bernier's perfume was manufactured or produced there, since it stated:

Contrary to applicant's contention, it is not necessary that goods be manufactured or produced at the geographic site for its name to be precluded from regis-

tration. That they be sold there is sufficient.

10 USPQ2d at 1957 n. 4.

█ There is no evidence that Bernier's perfume is sold on Rodeo Drive. The only evidence relating to the sale of any perfume is that Giorgio, which has a shop on Rodeo Drive, sells a perfume under the mark GIORGIO. What the record shows with respect to the sale of GIORGIO perfume is that it is a best selling perfume at Bloomingdale's; there is no indication that the latter has a Rodeo Drive store. The facts that perfume is associated with Giorgio and that Giorgio is associated with Rodeo Drive are too insubstantial and tenuous a basis to support the Board's conclusion that use of the mark RODEO DRIVE on Bernier's perfume would suggest to consumers that the perfume is sold on Rodeo Drive.

## CONCLUSION

The decision of the Trademark Trial and Appeal Board affirming the examiner's refusal to register on the primary register the trademark RODEO DRIVE for perfume is

REVERSED.