THIS OPINION
IS A PRECEDENT OF THE
TTAB

Mailed:  3/20/12

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Compania de Licores Internacionales S.A.

_____

Serial No. 75010230

_____

Jennifer P. Rabin of Akerman Senterfitt for Compania de Licores Internacionales S.A.

Karen M. Strzyz, Managing Attorney, Law Office 102.[1]

_____

Before Quinn, Holtzman and Kuhlke,
Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

Compania de Licores Internacionales S.A. filed an application to register the mark OLD HAVANA (in typed form) for "rum" in International Class 33.[2]  Applicant claimed the benefits of acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. §1052(f).

---

[1] We recognize that Ms. Strzyz is a Managing Attorney, but because she assumed responsibility for examination of the application from the original examining attorney, and for ease of reference, we will use the term "examining attorney" in references to Ms. Strzyz or the original examining attorney.
[2] Application Serial No. 75010230, filed October 25, 1995, alleging first use anywhere and first use in commerce on October 5, 1995.

The Examining Attorney refused registration under Section 2(e)(3) of the Trademark Act, 15 U.S.C. §1052(e)(3), on the ground that applicant's proposed mark is primarily geographically deceptively misdescriptive.[3] The Examining Attorney also found that the Section 2(f) claim is insufficient.

When the refusal was made final, applicant appealed. Applicant and the Examining Attorney filed briefs.

The application's filing date of "1995" is not a typo; the application has been pending for over sixteen years. A detailed chronology of the prosecution history is not warranted. Suffice it to say that the length of pendency is due to a string of events, including a suspension based on prior-filed applications; an abandonment of the application due to a failure to timely respond to an Office action, followed by the grant of a petition to revive; a final refusal, followed by an appeal and briefing; a suspension pending a decision by the Federal Circuit in a third-party's appeal involving a similar issue, and a subsequent delay by the Board in taking further action in this case after the decision; a remand of this application,

---

[3] Registration also was refused on the ground that the mark is geographically deceptive under Section 2(a) of the Trademark Act, 15 U.S. C. §1052(a). The Section 2(a) refusal subsequently was withdrawn.

approval of the application for publication, publication in the Official Gazette, and extensions of time to oppose granted to no less than four potential opposers, all followed by the Office's request for a remand to revisit the registrability of applicant's mark; the issuance of a new final refusal, followed by a request for reconsideration and a denial thereof; and the filing of supplemental appeal briefs which, at long last, brings us to this decision.[4]

Both applicant and the Examining Attorney introduced evidence during prosecution.  We first address the Examining Attorney's objection to certain exhibits attached to applicant's supplemental brief; because applicant did not file a supplemental reply brief, there is no response to the objection.  The following exhibits are attached to the brief:  a Wikipedia entry (Exhibit A); a copy of applicant's product label (Exhibit B); a TARR[5] printout of one third-party registration (Exhibit C); one page retrieved from a third-party website covering a particular

---

[4] Applicant set forth a detailed account of the prosecution history in its supplemental appeal brief filed on April 1, 2011; the Examining Attorney, in her brief, agreed with applicant's account.

[5] The "Trademark Applications and Registrations Retrieval" system, existing when applicant submitted this evidence, is an official database of the USPTO.  The current system, "Trademark Status and Document Retrieval" (TSDR), integrates "old" TARR and TDR ("Trademark Document Retrieval") into one database.

brand of rum (Exhibit D); a TARR printout of one third-party registration (Exhibit E); excerpts of a third-party website covering the technology of rum-making (Exhibit F); and excerpts of a third-party website about rum classifications (Exhibit G). The Examining Attorney also points out that applicant, in its supplemental appeal brief, merely listed three third-party registrations at pages 12-13, without providing copies thereof.

The Examining Attorney objected to the introduction of Exhibits C through G, and the list of three third-party registrations. The objections are well taken.

The record in an application should be complete prior to the filing of an appeal. Trademark Rule 2.142(d). Exhibits attached to a brief that were not made of record during examination are untimely, and generally will not be considered. *See, e.g., In re Brouwerji Bosteels*, 96 USPQ2d 1414 (TTAB 2010); *In re Herbal Science Group LLC*, 96 USPQ2d 1321 (TTAB 2010); *see also* TBMP §1203.02(e) (3d ed. 2011). So as to be clear, in the present case, there was further examination after remand of the application when evidence could have been submitted even though the appeal had been filed. Inasmuch as Exhibits C-G were not timely made of record during examination, they are stricken and have not been considered in making our decision.

As for the mere listing of the three third-party registrations at pages 12-13 of the brief, the registrations do not form part of the record on appeal. Firstly, applicant did not submit copies of the registrations; merely listing third-party registrations is insufficient to properly make them of record. *In re Dos Padres Inc.*, 49 USPQ2d 1860, 1861 n.2 (TTAB 1998). Secondly, even if copies were submitted with the brief, they would be untimely and, thus, not proper for consideration. Trademark Rule 2.142(d). *See* TBMP §1208.02. Accordingly, we have not considered these three third-party registrations.

### Geographically Deceptive Misdescriptiveness

The elements of a refusal under Section 2(e)(3) are as follows:

1) The primary significance of the mark is a generally known geographic place;

2) The goods or services do not originate in the place identified in the mark;

3) Purchasers would be likely to believe that the goods or services originate in the geographic place identified in the mark; and

4) The misrepresentation would be a material factor in a substantial portion of the relevant consumers' decision to buy the goods or use the services.

*In re Spirits International, N.V.*, 563 F.3d 1347, 90 USPQ2d 1489, 1490-95 (Fed. Cir. 2009); *In re California Innovations*, 329 F.3d 1334, 66 USPQ2d 1853, 1858 (Fed. Cir. 2003).

Applicant admits that its rum does not originate in Havana, Cuba.  Applicant argues, however, that the term OLD HAVANA engenders meanings other than that of a geographic location; that purchasers will not make a goods/place association because they are well aware of the Cuban embargo and that, therefore, purchasers know that rum cannot come from Cuba; and that the use of HAVANA in applicant's mark is not a misrepresentation that is a material factor in the consumers' decision to buy applicant's rum.

The Examining Attorney maintains that the primary significance of OLD HAVANA is as a generally known geographic location; that the goods do not come from Havana, Cuba; that purchasers will make a goods/place association and mistakenly believe that the rum originates in Havana, and that the Board, in a precedential decision (discussed *infra*) involving the identical mark and identical goods, but a different applicant, endorsed this view; and that the misrepresentation regarding the geographic origin of the rum would materially impact a

substantial portion of the relevant consumers' decision to purchase the rum.

We now review the Board's precedential decision referenced by the Examining Attorney, *In re Bacardi & Co. Ltd.*, 48 USPQ2d 1031 (TTAB 1997).[6] The applicant in that case sought to register various HAVANA (or HABANA) formative marks for rum, including OLD HAVANA. The examining attorney refused registration under Section 2(e)(3) on the ground that the marks were primarily geographically deceptively misdescriptive for goods that did not come from Cuba. At the time the appeal was decided, the test under Section 2(e)(3) did not include the materiality requirement of the present test.[7] The Board found that the term HAVANA is the name of a major city in Cuba, and that even if applicant had supported its argument that the name evokes a particular lifestyle, "such association would not contradict the primary geographic significance of the term, as the association may be precisely because of the primary significance of HAVANA as a city in Cuba." *Id.* at 1033-34. The Board indicated that the presence of the additional term "OLD" in the proposed

---

[6] Any discussion or even citation to the Board's earlier decision is glaringly absent from applicant's brief.

[7] As discussed *infra*, the Federal Circuit first enunciated the current test in *In re California Innovations*, 66 USPQ2d at 1858.

mark OLD HAVANA did not detract from the primary geographic significance. The Board stated that "the addition of the term OLD to the geographic term [in] OLD HAVANA, simply either describes a characteristic of the city or refers to a section of the city. Thus, OLD reinforces the geographic significance of the composite mark." *Id.* at 1034. With respect to a goods/place association, the Board relied upon evidence from dictionaries, encyclopedias and gazetteers indicating that Havana, Cuba is a major city that produces a variety of goods, among which rum is listed as a significant product. Thus, the Board found that purchasers are likely to believe that the rum to be sold under the proposed mark OLD HAVANA originated in Havana, Cuba. Accordingly, the Board affirmed the Section 2(e)(3) refusal. The applicant pointed out that it was legally precluded from distributing rum originating in Cuba in United States commerce, but the Board was not persuaded, finding that OLD HAVANA was primarily geographically deceptively misdescriptive of rum because purchasers' belief that the rum to be sold under the mark originated in Havana, Cuba was a mistaken belief. In making this finding, the Board found no evidence "to support applicant's contention that, in view of the U.S. trade sanctions against Cuba, purchasers will know that no

product on the U.S. market could originate in Cuba." *Id.*
at 1035, n.13.

Since the earlier Board decision issued, there has
been a substantive change in the law by the addition of the
materiality factor as explained in *In re California
Innovations.* Applicant and the Examining Attorney have
presented evidence relating to the materiality factor and
we must decide this appeal based on the evidence they have
introduced into the record.[8] Despite the passage of
fourteen years and the additional requirement of
materiality, we reach the same conclusion as the one in the
Board's earlier decision, namely that OLD HAVANA is
primarily geographically deceptively misdescriptive for rum
under Section 2(e)(3).

We now turn to consider the specifics of the refusal.

### Primary Significance

A mark is not primarily geographic where the
geographic meaning is obscure, minor, remote, or not likely
to be connected with the goods. *In re Wada*, 194 F.3d 1297,
52 USPQ2d 1539, 1540 (Fed. Cir. 1999) (NEW YORK WAYS
GALLERY held primarily geographically deceptively
misdescriptive where manufacturing listings and Nexis®

---

[8] The Examining Attorney does not contend that the earlier Board
decision has a preclusive effect on the present appeal.

excerpts showed that handbags and luggage are designed and manufactured in New York); *In re Jacques Bernier, Inc.*, 894 F.2d 389, 13 USPQ2d 1725, 1726 (Fed. Cir. 1990). Because the applied-for mark is a composite mark, OLD HAVANA must be evaluated as a whole. *In re Save Venice New York, Inc.*, 259 F.3d 1346, 59 USPQ2d 1778, 1782 (Fed. Cir. 2001) (THE VENICE COLLECTION and SAVE VENICE INC. composite marks featuring an image of the winged Lion of St. Mark held primarily geographically deceptively misdescriptive of products that do not originate in Venice, Italy, where an encyclopedia and a gazetteer showed that Venice was a large metropolitan area where fine art objects, glassware, and decorative items had been made and sold for centuries, and a popular tourist destination). It is not improper, however, to give greater weight to the dominant feature of a composite mark in the course of evaluating the mark as a whole. *In re Wada*, 52 USPQ2d at 1541.

To support a refusal to register geographic matter, the Trademark Act requires that the mark be primarily geographic, that is, that its primary significance be that of a geographic location. The fact that the proposed mark has meaning or usage other than as a geographic term does not necessarily alter its primary geographic significance. Thus, if a geographic term has another meaning, we must

determine whether the primary significance is geographic. *See, e.g.*, *In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986) (THE NASHVILLE NETWORK held primarily geographically descriptive of television program production and distribution services, the Board finding that the primary significance of the term was Nashville, Tennessee, and not that of a style of music); *In re Cookie Kitchen, Inc.*, 228 USPQ 873, 874 (TTAB 1986) (the fact that MANHATTAN identifies an alcoholic cocktail does not alter the primary significance of that term as a borough of New York City); *In re Jack's Hi-Grade Foods, Inc.*, 226 USPQ 1028, 1029 (TTAB 1985) (finding that the fact that NEAPOLITAN identifies, among other things, a type of ice cream, does not alter the primary significance of that term as meaning "of or pertaining to Naples in Italy"); *see also* TMEP §1210.02(b)(i) (8th ed. 2011).

Applicant argues that the term "Havana" has two non-geographic meanings, thereby rendering the term not primarily geographic in meaning. Applicant contends that the term suggests a certain special method of production used by rum distillers; and that the term possesses a certain prestige, evoking a place in time or a historical era, rather than a geographic city.

11

More specifically, applicant points to Cuban expertise and "world class know how" in the distillation of rum. Applicant states that there is a traditional "Havanese" method of distilling rum, resulting in a particular amber color. According to applicant, this method of distillation or style of rum making is used in the production of applicant's rum.

Applicant also contends that the term "Old Havana" is not the name of a city and is not synonymous with Havana, Cuba. Rather, according to applicant, the term conjures up nostalgia for the social and cultural scene of a long ago, pre-Castro Cuba. Applicant goes on to state that evoking the modern-day actual geographic location of Havana, Cuba is entirely counter to applicant's choice of the mark, and its attendant labeling and branding strategy, which are all intended to reference an "era" and "a place in time," rather than a geographic location. Thus, applicant concludes, it would be "impossible" for rum to emanate from "Old Havana," which is not a specific geographic location, but rather a reference to the culture, atmosphere and social climate of the city's yesteryear that no longer exists in present-day Communist Cuba. In this connection, applicant argues that certain places named in third-party registered marks, such as Beverly Hills, California (CAMP

12

BEVERLY HILLS), New York City (ESSEX/NYC), and Switzerland (SWISS MISS) "are known as prestige locations." (Brief, pp. 7-9). Applicant posits that Havana, Cuba is similar, stating that companies commonly select trademarks containing these types of city names "to impart connotations of prestige, quality, glamour and expertise that these city names possess." Specifically, applicant asserts that OLD HAVANA "conjures up images of things reminiscent of long ago Cuba and Havana, namely, cigars, music, cocktails, beaches and nightlife...[and] [r]um, of course, was one of the many products associated with 'Old Havana.'" (Brief, p. 9).

It is beyond dispute that Havana, Cuba is a generally known geographic location. As shown by an encyclopedia entry, Havana is a city, capital, major port and the leading commercial center of Cuba. It also constitutes one of Cuba's fourteen provinces. Havana is the largest city in the Caribbean region and has one of the greatest treasuries of historic colonial preserves in the Western hemisphere.[9] Havana's industries include rum distilleries.[10] "As the principal city and national

---

[9] *See* pages from website www.britannica.com, attached to the September 3, 2008 Office action.

[10] *See* pages from website www.encyclopedia.com, attached to the September 3, 2008 Office action.

capital, Havana's economy dominates much of the nation...Prior to the revolution the city supported comparatively little manufacturing activity, although rum production, cigar making, and shipbuilding have been mainstays of the city's economy since the colonial period."[11]  In sum, Havana is the focal point of Cuban commerce, with rum distilleries among its principal industries.[12]

Accordingly, we find that the primary significance of the term "Havana" is a well known geographic place.

The addition of "OLD" to "HAVANA" does not diminish the *primary* geographic significance when the mark OLD HAVANA is considered as a whole.  As the earlier Board panel found, "the addition of the term OLD to the geographic term [in] OLD HAVANA, simply either describes a characteristic of the city or refers to a section of the city.  Thus, OLD reinforces the geographic significance of the composite mark."  *In re Bacardi & Co.*, 48 USPQ2d at 1034.  Indeed, contrary to applicant's contention that "Old Havana" "is not a specific geographic location" (Supplemental Brief, p. 6), some evidence indicates that

---

[11] *See* pages from website www.encarta.com, attached to the September 3, 2008 Office action.

[12] *See* pages from website www.reference.com, attached to the February 2, 2010 Office action.

there is a section of the city referred to by the name:

"Commercial Manager Martha Hernandez [of the Havana Club Rum Museum] said enhancements gathered in Old Havana include this museum dedicated to the explanation of methods on how to prepare rum and its history, besides other recreational offers found here."[13]  And "If you travel to Cuba to party it up, then Old Havana will probably suit you."[14]

The record does not support applicant's assertion that OLD HAVANA evokes the primary significance of a particular lifestyle of a bygone era.  Even if the record showed this connection, it would not overcome the evidence establishing the primary geographic significance of OLD HAVANA as the connection may be made precisely because of the primary significance of Havana as a city in Cuba.  *See In re Wada*, 52 USPQ2d at 1540 (the primary geographic significance of NEW YORK is not lost by the addition of the words WAYS GALLERY).

We also are not persuaded by applicant's contention that the applied-for mark suggests a certain style or method of production used by rum distillers.  Although we

---

[13] *See* pages from website www.cubaheadlines.com, attached to the February 2, 2010 Office action.

[14] *See* pages from website www.travel.aol.com, attached to the January 27, 2011 Office action.

acknowledge that the evidence shows Cuban expertise in

making rum, the high quality of Cuban rum is also

attributed to Cuba's climate, fertile soil and a sugarcane

crop that is world renowned.[15]  That is to say, we recognize

that a certain style or method of distillation of rum may

be referenced as "Cuban style"; the evidence fails,

however, to show that there exists a method for distilling

rum that is specifically referred to as "Havanese."  What

the evidence does show, however, is that rum production is

a major industry in Havana.  The Wikipedia excerpt reads,

in pertinent part, as follows:

> Havana's economy first developed on the
> basis of its location, which made it
> one of the early great trade centres in
> the New World.  Sugar and a flourishing
> slave trade first brought riches to the
> city....Despite efforts by Fidel
> Castro's government to spread Cuba's
> industrial activity to all parts of the
> island, Havana remains the centre of
> much of the nation's industry...The
> traditional sugar industry, upon which
> the island's economy has been based for
> three centuries...controls some three-
> fourths of the export economy....Other
> food-processing industries are also
> important...[including] production of
> alcoholic beverages (particularly rum).

Applicant's reliance on third-party registrations of

marks comprising, in part, "prestige locations" (*e.g.*, New

---

[15] *See* pages from website www.wineandalcohol.com, attached to the
September 3, 2008 Office action.

16

York City and Beverly Hills) is not persuasive. We are not privy to the files and evidence therein. In any event, the registered marks are all distinguishable from the applicant's mark. *See In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001)("Even if some prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the board or this court."). Further, "[e]ven if all of the third-party registrations should have been refused registration...such errors do not bind the USPTO to improperly register Applicant's marks." *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009), citing *In re Boulevard Entertainment*, 334 F.3d 1336, 67 USPQ2d 1475, 1480 (Fed. Cir. 2003).

The first element of the section 2(e)(3) test is satisfied.

## Origin

It is undisputed that applicant's rum does *not* originate in Havana, Cuba. The second element of the test is satisfied.

## Goods/Place Association

The third element of the test does not assess whether the geographic term is the name of a place known generally

by the relevant public. Rather, the inquiry is whether the mark is used in connection with goods that purchasers are likely to believe are connected with the location in question, when they are not. *In re Loew's Theaters, Inc.*, 769 F.2d 764, 226 USPQ 865 (Fed. Cir. 1985). The examining attorney's burden "is simply to establish a reasonable predicate for [the] conclusion that the public would be likely to make the particular goods/place association." *Id.* at 868. To establish a goods/place association, the examining attorney may provide such evidence as excerpts from telephone directories, gazetteers, encyclopedias, geographic dictionaries, the LexisNexis® database, or the results of an Internet search. *Id.* (finding evidence from a gazetteer and dictionary showing that tobacco is a crop produced and marketed in Durango, Mexico sufficient to establish a prima facie goods/place association). The examining attorney should also examine the specimen and any other evidence in the record that shows the context in which the mark is used. *See* TMEP §1210.04; *In re Les Halles de Paris J.V.,* 334 F.3d 1371, 67 USPQ2d 1539, 1541 (Fed. Cir. 2003) ("[T]he goods-place association often requires little more than a showing that the consumer identifies the place as a known source of the product."); *see also In re Save Venice New York Inc.,* 59 USPQ2d at

1783-84; *In re Wada*, 52 USPQ2d at 1541; *In re Loew's Theatres, Inc.*, 226 USPQ at 868; *In re Joint-Stock Co. "Baik,"* 80 USPQ2d 1305 (TTAB 2006) (BAIKALSKAYA held primarily geographically descriptive of vodka where the record showed that applicant is located in Irkutsk, Russia, a city near Lake Baikal and one of the main export regions of Russian vodka, applicant's vodka is made from water piped directly from Lake Baikal, Lake Baikal is the world's largest fresh water lake, and there are numerous references to "Baikal" in publications from various cities throughout the United States and in national publications); *In re Broyhill Furniture Indus., Inc.*, 60 USPQ2d 1511, 1516-17 (TTAB 2001) (finding evidence that Tuscany, Italy is an important industrial center that produces a variety of products including furniture, and that several businesses advertise the sale of furniture from Tuscany on the Internet, was sufficient to establish a goods/place association between Tuscany and furniture, even though Tuscany is not famous for its furniture); *In re Boyd Gaming Corp.*, 57 USPQ2d 1944 (TTAB 2000) (HAVANA RESORT & CASINO and ROYAL HAVANA RESORT & CASINO held primarily geographically deceptively misdescriptive of wearing apparel, beauty products and perfume that do not come from Havana, Cuba; goods/place association established where the

record showed that Havana produces a variety of goods, including clothing and cosmetic items); *In re Bacardi & Co. Ltd.,* 48 USPQ2d at 1035, (OLD HAVANA, HAVANA SELECT, HABANA CLASICO, HAVANA PRIMO, and HAVANA CLIPPER all held primarily geographically deceptively misdescriptive of rum that does not originate in Havana, Cuba; goods/place association established by evidence showing that Havana is a major city and rum is a significant product).

The record is replete with evidence establishing a connection between rum and Cuba and, in particular, Havana, Cuba. As noted earlier, Cuba enjoys an excellent sugar crop, and sugar is an important ingredient in the production of rum. It then is no surprise that rum is the most famous alcoholic product of Cuba.[16] Cuba has been called the "Isle (or Island) of Rum," owing to its "world famous sugar cane, a favorable Caribbean climate, fertile soil and the unique know-how of Cuban 'Maestro Roneros' (master rum-makers)."[17] "Cuba has several names. Among them, the Island of Rum. The Cuban rum is distinguished in

---

[16] *See, e.g.*, pages from websites www.encyclopedia.com, attached to the September 3, 2008 Office action; www.encarta.msn.com, attached to the September 3, 2008 Office action; www.havana-guide.com, attached to the September 3, 2008 Office action; and www.blackcuba.com, attached to the February 2, 2010 Office action.

[17] *See* pages from website www.therumelier.com, attached to the January 27, 2011 Office action.

20

the world as one of the best, thanks to the fertile lands, rain, sun and the climate of this prodigious island."[18] "This little island in the Caribbean, this beautiful, historical island of Cuba means sun, salt, and some of the best rum in the world.  Once you've tried Cuban rum, life will never be quite the same....First stop in Cuba is the capital city of Havana....I'm here for the rum.  Cuba is home to some of the best rum in the world."[19]  "While you're there, be sure to visit the Havana Rum factory to see how they make the best rum in the world."[20]  "In truth, there never has been and never will be rum as good as ours.  Those made outside Cuba lack the best raw material that exists, molasses made from Cuban sugarcane."[21]  As noted above, the Cuban Havana Club Rum Museum, a tourist attraction in the capital city, has been described as being located in a part of the city called "Old Havana."[22]

---

[18] *See* pages from website www.cubaluxuryhotels.com, attached to the January 27, 2011 Office action.

[19] *See* pages from website www.thirstytraveler.com, attached to the January 27, 2011 Office action.

[20] *See* pages from website www.travel.aol.com, attached to the January 27, 2011 Office action.

[21] *See* pages from website www.cigaraficionado.com, attached to the September 3, 2008 Office action.

[22] *See* pages from website www.cubaheadlines.com, attached to the February 2, 2010 Office action.

Despite this evidence, applicant maintains that there is no reasonable basis to believe that the public would be deceived as to the origin of applicant's rum because there is no evidence that consumers are likely to believe that the products derive directly from Havana, Cuba. In this connection, applicant's main point is that American consumers have long grown accustomed to the fact that they cannot buy "real" Cuban rum due to embargo restrictions. Applicant introduced a Wikipedia entry showing that the Cuban embargo began in 1963, making it the most enduring trade embargo in modern history. Thus, applicant contends, when consumers encounter applicant's brand of rum, they will not believe that the rum comes from Cuba; consumers will instead understand applicant's mark in its primary, non-geographic sense: that OLD HAVANA rum is produced using traditional "Havanese" distillation and production methods and formulas, and that the rum possesses the quality and character associated with old-time, pre-Castro Cuba.

In several cases, the Board has been presented with similar arguments based on the Cuban embargo. But in each such previous case, the Board found the evidence for that assertion lacking. *See In re Jonathan Drew, Inc.*, 97 USPQ2d 1640 (TTAB 2011) (KUBA KUBA for cigars is primarily

22

geographically deceptively misdescriptive; no evidence that the embargo on Cuban products would have any effect on the perception of the term as geographically deceptive); *In re Boyd Gaming Corp.*, 57 USPQ2d at 1945-46; *In re Bacardi & Co. Ltd.*, 48 USPQ2d at 1035-36.  Similarly, in this case, the Examining Attorney has presented evidence that is more than sufficient to establish a reasonable predicate of a goods/place association between rum and Havana, Cuba.  A Wikipedia entry noting the longevity of the Cuban embargo is far too attenuated to overcome that ample showing.

Applicant also points to its product labeling (shown below) which, applicant claims, prevents any possibility that a consumer would believe that the rum is actually distilled in or shipped from Cuba.



Applicant makes three specific points: the use of the word "brand" immediately below OLD HAVANA informs consumers that OLD HAVANA is functioning as a trademark and not as an indicator of geographic origin; the "Cuban Style Rum" statement makes it clear to the consumer that the rum is made in the "Cuban/Havanese" style and that it is not from Cuba; and the statement "Product of USA" ensures that a consumer will not mistakenly believe that the rum is actually made in Cuba.

In connection with this argument, applicant has relied on the Court's opinion in *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 702 F.Supp.2d 238, 95 USPQ2d 1966 (D.Del. 2010). This false advertising case was based on the plaintiff's claim that the defendant was engaged in false and misleading statements regarding the geographic origin of its rum produced in Puerto Rico under the mark HAVANA CLUB. Applicant contends that the rationale in the false advertising case is directly on point in this appeal, and is supportive of registration of applicant's mark OLD HAVANA. The Court found that the term "geographical origin" in the Trademark Act is not limited strictly to the place of manufacture, but rather is "broad enough to encompass some aspect of a good's history." Applicant urges, therefore, that geographical origin in the context

of a Section 2(e)(3) registrability issue should be subject to the same interpretation.  Applicant points out that the Court relied upon the Board's decision in the case of *Corporacion Habanos, S.A. v. Anncas Inc.*, 88 USPQ2d 1785 (TTAB 2008), to support the proposition that "a product may be found to originate from a place, even though the product is manufactured elsewhere."  Drawing on this language, applicant submits that where "geographical origin" encompasses not just the place of manufacture, but rather aspects of a product's history, then the mark is not primarily geographically deceptively misdescriptive.  This explains, according to applicant, why the Office has issued registrations for marks that include CUBA or HAVANA, based on ingredients or historic formulas used for production, for items not manufactured in Cuba, but which may have had an historical association with such country.  The Court found that Bacardi's HAVANA CLUB product had a Cuban heritage, and that depicting such heritage was not deceptive.

We concur with the Examining Attorney's assessment that the Court's decision is distinguishable from the issue to be decided herein.  The Court case involved a false advertising claim, readily distinguishable from the registrability of a trademark.  The Court alluded to this

in indicating that "a statement concerning trademark rights, which are not a good or service and do not confer information regarding the nature, characteristics or qualities of its rum, cannot be the basis for a false advertising claim under 15 U.S.C. §1125(a)(1)(B)." *Id.* at 1971, n.12. The Court was clear in its statement that it was not required to analyze "actual (or likely) consumer deception." *Id.* at 1975. The Court looked strictly to the product labels, concluding that the labeling was neither false nor misleading.

As pointed out by the Examining Attorney, when making a Section 2(e)(3) determination, evidence other than the mark on the label or matter found on a specimen providing further information as to source cannot negate the geographic deceptive misdescriptiveness that may be conveyed by the mark itself. We agree. The points made by applicant relative to its product label are based on statements separate and apart from any trademark significance in the mark OLD HAVANA in and of itself. While we acknowledge, as noted by applicant, that the case of *In re Budge Mfg. Co. Inc.*, 857 F.2d 773, 8 USPQ2d 1259 (Fed. Cir. 1988), involved an issue of deceptiveness under Section 2(a) (LOVEE LAMB for automobile seat covers), we believe that the Federal Circuit's language in that case is

26

equally applicable to the Section 2(e)(3) issue we face in the present case; that is, we must discount "explanatory statements in advertising or on labels which purchasers may or may not note and which may or may not always be provided. The statutory provision bars registration of *a mark* comprising deceptive matter. Congress has said that the advantages of registration may not be extended to a mark which deceives the public. Thus, the mark standing alone must pass muster, for that is what the applicant seeks to register, not extraneous explanatory statements." *Id.* at 1261 (emphasis in original).[23]

Accordingly, the statements on applicant's bottle labels do not negate the primary geographically deceptive misdescriptiveness of the mark sought to be registered.

Applicant also argues that applicant's rum actually has a connection with Havana, thereby negating any deceptive misdescriptiveness. In this connection,

---

[23] We note that the Federal Circuit has held that with the NAFTA amendments, §2 of the Act "no longer treats geographically deceptively misdescriptive marks differently from geographically deceptive marks," and anticipated that the "PTO will usually address geographically deceptive marks under subsection 2(e)(3) of the amended Lanham Act rather than subsection 2(a)." *California Innovations*, 66 USPQ2d at 1856-57. Thus, the legal standards for determining whether, post-NAFTA, a mark is primarily geographically deceptively misdescriptive under §2(e)(3) are the same as those applied in determining deceptiveness under §2(a). *Id*. at 1857; *see also* TMEP § 1210.01(c).

27

applicant introduced the declaration of its president, Gerardo Abascal, who claims to have more than 30 years of experience in making "Cuban-style" rums. Mr. Abascal was born in Cuba, and trained in the art of rum distillation by his Cuban family, who ran a rum distillation business in Cuba beginning in the nineteenth century. The "Havanese" method of "my family's secret formulation and distillation" taught to Mr. Abascal in Cuba is used in the production of applicant's rum.

We are not persuaded by this argument based on applicant's use of a Cuban or "Havanese" style distillation technique to produce its rum. *See Corporacion Habanos S.A. v. Anncas Inc.*, 88 USPQ2d at 1792-93. Applicant does not dispute that its rum is not produced in Havana. The evidence also shows that applicant is currently located in Florida. By its argument, applicant attempts to compensate for these facts by changing the inquiry from one focused on the geographic origin of the goods to one focused on a purported geographic style or method of producing the rum originating in Havana, Cuba. The problem with this argument is that the case law contemplates substantial current connections to show that the goods originate in the place named in the mark. The evidence of record herein is simply too tenuous to support a finding that the goods in

fact come from Havana because there is no evidence of a sufficiently substantial current connection between applicant's rum and Havana.

Although the case law recognizes that goods need not be manufactured in the named place to be deemed to "originate" there, the case law also recognizes that the concept of "originate" is not so broad as to encompass any connection that the goods have with the named place. Rather, the connection with the geographic place must be sufficiently substantial so that consumers would consider the goods to come from there. For example, if the goods contain a main ingredient or component from the geographic place named in the mark, such a connection can be sufficient to find the goods originate there. *See In re Loew's Theatres, Inc.* 226 USPQ at 868 (evidence that tobacco is one in a short list of crops produced and marketed in Durango, Mexico sufficient to establish the public would expect applicant's chewing tobacco to originate there); *see also In re Joint Stock Company "Baik"*, 80 USPQ2d at 1310-11. The mere fact that applicant produces its rum in a "Cuban" or "Havanese" style under the direction of Mr. Abascal, who trained in the art of rum distillation in Cuba, is not a sufficient connection to deem the rum to originate there.

Based on the evidence of record, we find that the Examining Attorney has established a goods/place association between rum and Havana, Cuba.

### Materiality

The materiality element reflects the deceptiveness requirement of section 2(e)(3). *California Innovations*, 66 USPQ2d 1853. The Office must establish a reasonable predicate that the misrepresentation of the geographic origin of the goods would be a material factor in a significant portion of the relevant consumers' decision to purchase the goods. *See* TMEP § 1210.05(b); *Spirits Int'l*, 90 USPQ2d at 1490-95 (adding requirement that a substantial portion of the relevant consuming public be deceived); *California Innovations*, 66 USPQ2d 1853 (adding materiality requirement). In determining "materiality," the Board looks to evidence regarding the probable reaction of purchasers to a particular geographic term when it is used in connection with the goods. If there is evidence that the relevant goods, or related goods, are a principal product of the geographic area named by the mark, then the deception will most likely be found to be material. *See* TMEP §1210.05(c)(i).

Evidence that a place is famous as a source of the goods raises an inference in favor of materiality. *See In*

*re Les Halles de Paris J.V.*, 67 USPQ2d at 1542. Such evidence supports a presumption that a substantial portion of the relevant consumers is likely to be deceived. *See also In re Loew's Theatres, Inc.*, 226 USPQ at 868 n.6 ("[I]f the place is noted for the particular goods, a mark for such goods which do not originate there is likely to be deceptive under §2(a) and not registrable under any circumstances."); *In re Beaverton Foods Inc.*, 84 USPQ2d 1253 (TTAB 2007) (NAPA VALLEY MUSTARD CO. for mustard not from the Napa Valley was deceptive under Section 2(a) because it was a material deception; the Napa Valley is known for its mustard and is the venue for a widely advertised annual mustard festival).

Thus, the materiality element in cases involving goods generally will be satisfied if there is evidence showing that the place named in the mark is well known for the goods; or the goods are a principal product of the place named in the mark; or the goods are, or are related to, the traditional products of the place named in the mark, or are an expansion of the traditional products of the place named in the mark. *See In re California Innovations Inc.*, 66 USPQ2d at 1857; *In re Save Venice N.Y., Inc.*, 59 USPQ2d at 1784; *In re House of Windsor, Inc.*, 221 USPQ 53, 57 (TTAB 1983), *recon. denied*, 223 USPQ 191 (TTAB 1984); and TMEP

§1210.05(c)(i).  In support of the refusal, the Office should submit evidence showing that the association between the goods and the geographic place would be a material consideration in a consumer's decision to purchase the goods.  Searches that combine the place name with the name of the goods and terms such as "famous," "renowned," "well known," "noted for," "principal or traditional" may be useful to establish materiality.  The stronger the connection between the geographic place and the goods, the more likely the misrepresentation will be a material one. *In re California Innovations, Inc.*, 66 USPQ2d at 1857 ("[I]f there is evidence that goods like applicant's or goods related to applicant's are a principal product of the geographical area named by the mark, then the deception will most likely be found material and the mark, therefore, deceptive." (quoting *In re House of Windsor*, 221 USPQ at 57)).

Applicant would have us conclude that American consumers are not particular when it comes to the origin of rum, readily purchasing rum that comes from Puerto Rico and other Caribbean locations, such as the Virgin Islands.

Contrary to applicant's statement, the record establishes that Cuba, and in particular, its capital city, Havana is famous for rum, and thus we find that the

32

misdescription about the rum's origin conveyed by OLD HAVANA would be material to a consumer in making a purchasing decision. As discussed above, Cuba is known for its rum, even being called "The Island of Rum," and Havana in particular is a leading production center for rum. The following examples support this point: "And what can one say about Havana's famous rum, savoured straight or on the rocks, or mixed in fabulous cocktails, renowned as the best in the world."[24] "Cuban rum has a worldwide reputation."[25] "The excellence of Cuban rum, a product of its unique aging process, has made Cuban cocktails a perennial favorite the world over."[26] "While you're there [Havana, Cuba], be sure to visit the Havana Rum factory to see how they make the best rum in the world."[27] "Rum is the most famous alcohol product of Cuba."[28] "Official sources reported the Cuban Havana Club Rum Museum is one of the main tourist

---

[24] *See* pages from website www.usacubatravel.com, attached to the February 2, 2010 Office action.

[25] *See* pages from website www.havana-guide.com, attached to the September 3, 2008 Office action.

[26] *See* pages from website www.cuba.com, attached to the February 2, 2010 Office action.

[27] *See* pages from website www.travel.aol.com, attached to the January 27, 2011 Office action.

[28] *See* pages from website www.blackcuba.com, attached to the February 2, 2010 Office action.

attractions in Havana, since it has already welcomed one million visitors from the whole world throughout its nine years."[29]

In deciding *In re Jonathan Drew*, the Board did not require direct evidence of materiality. In discussing the examining attorney's evidentiary burden in light of *Spirits Int'l* and *California Innovations,* the Board stated:

> [T]o the extent that applicant is arguing that evidence allowing the Board to draw an inference of materiality is not sufficient and that direct evidence of public deception is required, we do not agree. It is well settled that evidence of what the relevant public understands a term to mean may be shown not only by direct evidence, such as consumer testimony and surveys, but it may also be inferred from indirect or circumstantial evidence, such as gazetteer entries and third-party websites, as we have in this case. See *In re Merrill Lynch, Pierce, Fenner and Smith Inc*., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987). See also *Bayer*, [488 F.3d 960, 82 USPQ2d 1828, 1832 (Fed. Cir. 2007)](online sources are probative of how a term would be perceived); *In re Reed Elsevier Properties Inc*., 482 F.3d 1376, 82 USPQ2d 1378, 1381 (Fed. Cir. 2007) ("third-party websites are competent sources to show what the relevant public would understand a term to mean").

> Further, we do not read the Court's decision in *Spirits* as departing from the Court's longstanding precedent which has permitted inferences of materiality to be drawn from the evidence, and serving as proof that a substantial portion of the relevant public will be deceived.

---

[29] *See* pages from website www.cubaheadlines.com, attached to the February 2, 2010 Office action.

*In re Jonathan Drew Inc.*, 97 USPQ2d at 1645-46.

Additionally, in *In re Les Halles de Paris, J.V.*, 67 USPQ2d at 1542, the Federal Circuit stated, "[f]or goods, the PTO may raise an inference in favor of materiality with evidence that the place is famous as a source of the goods at issue." Thus, indirect evidence of materiality is permitted, and an inference of materiality may be made if the place named in the proposed mark is famous for the goods. *See Daesang Corp. v. Rhee Bros. Inc.*, 77 USPQ2d 1753, 1763 (D. Md. 2005) (Court accepted indirect evidence of materiality in Section 2(e)(3) litigation); *Corporacion Habanos, S.A. v. Guantanamera Cigars Co.*, ___USPQ2d___ (TTAB, Opp. No. 91152248, Feb. 16, 2012).

The indirect evidence in the present case is sufficient to establish a reasonable predicate that a substantial portion of relevant consumers would understand that OLD HAVANA refers to Havana, Cuba, and that Cuba, and Havana, Cuba in particular, is well known for rum; and, thus, we may infer from the evidence that a substantial portion of relevant consumers would be deceived. Consumers would care about whether the rum they buy comes from Havana, Cuba, and the misrepresentation about the rum's origin conveyed by the mark OLD HAVANA is likely to materially impact the decision to purchase.

Accordingly, we find that the misrepresentation in the proposed mark OLD HAVANA would be a material factor in a substantial portion of the relevant consumers' decision to buy applicant's rum.

## Conclusion

The primary significance of Havana is the name of the capital of Cuba, a geographic location that is generally known to the American consumer. The presence of "OLD" in the mark OLD HAVANA does not diminish the primary geographic significance of the mark when considered as a whole; "OLD" only serves to reinforce the primary geographic significance which, in point of fact, is a section of Havana. Because of the large and well-known rum industry in Havana, consumers will make a good/place association, that is, consumers will mistakenly believe that the rum originates in Havana, Cuba when in fact it does not. Lastly, because of the renown of rum originating in Havana, Cuba, the geographic origin of the rum would be a material factor for a significant portion of the relevant consumers in their decision to buy the rum.

In view of the above, the Examining Attorney has established that OLD HAVANA is primarily geographically deceptively misdescriptive under Section 2(e)(3) of the Trademark Act.

36

## <u>Acquired Distinctiveness</u>

Although applicant has argued against the Section 2(e)(3) refusal, it also claimed acquired distinctiveness under Section 2(f). Applicant claims that it has used the mark since November 27, 1991, and that it has obtained registrations in several foreign countries.[30] In applicant's words, "[g]iven the amount of time the mark has been on the market, consumers have come to recognize the brand and associate it as a USA product. The mark Old Havana has come to be viewed by consumers as a symbol of quality rum, with a distinctive Caribbean taste." (Response to Office action, 2/4/02). This claim of distinctiveness was made under counsel's signature, and no affidavit or declaration was submitted in support of it. *See* TMEP 1212.07; Trademark Rule 2.41(b). Applicant mentioned this claim in its original appeal brief, but its supplemental brief is entirely silent on the point. The Examining Attorney, in her brief, reiterated that the claim is insufficient.[31]

---

[30] The date set forth in the original application was 1995.

[31] If an applicant, in its appeal brief, does not assert a claim made during prosecution, it may be deemed waived by the Board. *See* TBMP §1203.02(g). Because applicant mentioned the Section 2(f) claim in its original brief, and the Examining Attorney has considered the claim on the merits in her supplemental brief, we likewise will consider the claim.

Acquired distinctiveness may not be asserted to contravene a refusal under Section 2(e)(3) unless the mark became distinctive of an applicant's goods in commerce before December 8, 1993, the date of enactment of the NAFTA Implementation Act. *See In re Boyd Gaming Corp.*, 57 USPQ2d at 1947; TMEP §§1212.02(a) and 1210.07(b). Because applicant claims that it began using the mark in 1991, the mark could have acquired distinctiveness by December 8, 1993, and therefore this claim of acquired distinctiveness is not barred.[32] However, the only evidence of record to support its claim that its mark acquired distinctiveness prior to December 8, 1993 is applicant's attorney's claim of use beginning on November 27, 1991. Even if unsupported attorney statements were evidence, two years of use,

---

[32] As indicated earlier (footnote 2), the Section 2(a) refusal was withdrawn. Had the Section 2(a) refusal been maintained, a Section 2(f) claim would not have been available:

> Building on the decision in South Park Cigar [82 USPQ2d 1507 (TTAB 2007)], we hold that where an applicant is seeking registration for a mark with a geographic term on the Principal Register under Section 2(f) based on a claim that the mark had acquired distinctiveness prior to December 8, 1993, a geographically deceptive mark is properly refused registration under Section 2(a). Nothing in the statute or legislative history dictates otherwise. Moreover, this analysis is consistent with the practice of the USPTO.

*In re Beaverton Foods*, 84 USPQ2d at 1257; *see* TMEP §1210.05(d)(i).

without more, does not show the mark acquired distinctiveness as of December 8, 1993.  Accordingly, we agree with the Examining Attorney that the Section 2(f) claim is insufficient.

## <u>Decision</u>

The refusal to register under Section 2(e)(3) is affirmed.  The Section 2(f) claim is insufficient.